## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF VIRGINIA
### Charlottesville Division

| | |
|---|---|
| JOHN R. GRANO, JR. ) | |
| ) | |
| and ) | |
| ) | |
| CYNTHIA TAFT GRANO, ) | CIVIL ACTION NO.: |
| ) | |
| Plaintiff, ) | 3:20-cv- 65 _____ |
| ) | |
| v. ) | |
| ) | |
| RAPPAHANNOCK ELECTRIC COOPERATIVE, ) | |
| A Virginia Nonstock Corporation, ) | |
| ) | |
| SERVE:   Charles W. Payne, Jr., Esquire ) | |
| HIRSCHLER FLEISCHER ) | |
| 725 Jackson Street, Suite 200 ) | |
| Fredericksburg, VA 22401 ) | |
| ) | |
| Defendant. | |

## COMPLAINT

To the Honorable Judges of said Court:

The Plaintiffs John R. Grano, Jr. and Cynthia Taft Grano (collectively hereinafter "the Granos"), by counsel, file this Complaint against Defendant Rappahannock Electric Cooperative (hereinafter "REC"), for the unlawful deprivation of their constitutional property and contract rights under the color of state law, in violation of the U.S. Constitution's Due Process Clauses of the Fifth and Fourteenth Amendments, and the Contracts Clause of Article I, Section 10. Virginia Code § 55.1-306.1 (the "Statute") has radically rewritten Virginia property law without providing due process or compensation, and has *ex post facto* rewritten existing easement contracts and impaired obligations retroactively. The Statute legislatively expands the allowable uses of REC's existing electric distribution easement on the Granos' property ("the 1989 Electric

Distribution Easement") to allow the installation or maintenance of broadband or other communications services including fiber optic.

Easements are, by definition, the grant of a right to use another's property only for the express purposes specified in the easement. REC's 1989 Electric Distribution Easement is an express easement for the sole purpose of "operat[ing] and maintain[ing] an electric distribution system." Before July 1, 2020, the 1989 Easement did not permit REC to make any other uses of the Granos' property. If REC wished to add another use, e.g. the installation or maintenance of broadband or other communications services, REC would have needed to acquire a new and different easement or otherwise secure the additional property rights from the Granos. Indeed, prior to the adoption of Virginia Code § 55.1-306.1, REC attempted to acquire the property from the Granos by purchase.

However, Virginia Code § 55.1-306.1, which became effective on July 1, 2020, overturned centuries of established property law by rewriting existing or future electric distribution or communications easements, such as the Granos', to include, by legislative fiat, "the installation and operation of broadband or other communications services[,] to provide or expand broadband or other communications services." *But see United States Forest Serv. v. Cowpasture River Pres. Ass'n*, 140 S. Ct. 1837 (2020) ("[E]asements grant only nonpossessory rights of use limited to the purposes specified in the easement agreement") (June 15, 2020). The statute authorizes REC to ignore centuries of established property law and shortcut the traditional methods of acquiring rights through negotiation or authorized condemnation. As of July 1, 2020, its effective date, the Statute deprived the Granos of the right to prohibit others, including REC, from using their property and the 1989 Electric Distribution Easement for broadband or other communications services (which may hereinafter be referred to as "fiber optic") without recourse

for the property rights the Statute transferred from the Granos to REC.  This is true for all landowners with existing electric distribution or communications easements, who are the only landowners for which the statute has any impact.

As of July 1, 2020, REC unconstitutionally possesses the purported right to lay, operate, and maintain fiber-optic cable on the Granos' property under the newly-passed Virginia Code § 55.1-306.1.  Accordingly, REC has foregone its recent attempt to acquire a new easement and its offer of payment for the right to use the 1989 Electric Distribution Easement for the installation and operation of broadband or other communications services.  Instead, it has claimed to acquire these rights under color—and by virtue—of the Statute, and it purportedly retains the right to physically invade the Granos' property to exercise them under color of the statute at any point in the future.  REC has previously affixed appurtenances to allow it to run fiber optic cables on some poles within its easement, in anticipation of exercising its purported rights under the statute, and may return at any time.[1]

Accordingly, the Granos seek declaratory relief, pursuant to 28 U.S.C. § 2201(a) that Virginia Code § 55.1-306.1, both on its face and as applied to the Granos, represents a deprivation of property without due process of law in violation the Fifth and Fourteenth Amendments, and impairs contracts, including their contract with REC in violation of the Contract Clause, Article I, Section 10.  The Granos further seek a permanent injunction, pursuant to 28 U.S.C. § 2202, preventing REC from trespassing on, invading, occupying, or otherwise taking their private property, and preventing REC or any of its permittees or assigns from

---

[1] Exhibit 1 shows REC owned poles on the Granos' property in the REC easement.  Visible in the picture are a yellow "wheel" onto which fiber optic line is intended to be strung and a green "spool" with a "pull cord" used for stringing fiber optic lines.  REC affixed these appurtenances to the poles as it prepared to run fiber optic cable, and had affixed these same appurtenances to poles within the same easement on neighboring properties.  REC later removed this equipment, but has in no way relinquished its purported rights under the statute to return at any time to make use of the Granos' property.

utilizing their property for the laying, operation, or maintenance of fiber-optic cable or any other unauthorized use.

The Granos respectfully petition the Court for relief pursuant to Federal law, and in support thereof, allege the following:

## NATURE OF ACTION, VENUE AND JURISDICTION

### NATURE OF ACTION

1.      This case is a civil action arising under the U.S. Constitution; the Declaratory Judgment Act, 28 U.S.C. § 2201 *et. seq*. (and Fed. R. Civ. P. 57); and the Civil Rights Act of 1871 (the Anti-Ku Klux Klan Act), 42 U.S.C. §§ 1983, 1988, in which the Granos seek declaratory and injunctive relief that Virginia Code § 55.1-306.1, both on its face and as applied to the Granos, violates the U.S. Constitution's Due Process Clauses, and the Contracts Clause. *See* U.S. Const. amend. V; XIV; art. I, § 10.

2.      The Granos further seek a permanent injunction pursuant to 28 U.S.C. § 2202 preventing REC or any of its permittees or assigns from laying, operating, or maintaining broadband or communications systems, including fiber-optic cable, on the Granos' property without obtaining the rights for such purposes by way of negotiated purchase or a valid exercise of REC's delegated eminent domain authority.

3.      Plaintiffs request a speedy hearing of this declaratory-judgment action pursuant to Fed. R. Civ. P. 57 ("The court may order a speedy hearing of a declaratory-judgment action.").

4.      This suit draws into question the constitutionality of a state statute, Virginia Code § 55.1-306.1.  The Commonwealth of Virginia, one of its agencies, or one of its officers or employees in an official capacity are not parties.  Pursuant to Fed. R. Civ. P. 5.1, Plaintiffs state that they will promptly file a separate notice of constitutional question stating the questions and

identifying the paper that raises it and serve the notice and paper on the Virginia Attorney

General—either by certified or registered mail or by sending it to an electronic address

designated by the attorney general for this purpose.  The Plaintiffs request that pursuant to Fed.

R. Civ. P. 5.1(b), the court certify under 28 U.S.C. § 2403 to the Virginia Attorney General that

the constitutionality of a state statute has been questioned, and that the Commonwealth of

Virginia may intervene within the time specified by Rule 5.1.

## SUBJECT MATTER JURISDICTION

5.      This Court has original jurisdiction over this matter to enter the relief requested

pursuant to 28 U.S.C. § 1331, 28 U.S.C. 1343, and 28 U.S.C. §§ 2201, 2202.

6.      An actual controversy exists between the parties.  28 U.S.C. § 2201.

## PERSONAL JURISDICTION OVER DEFENDANT

7.      The Defendant is subject to the jurisdiction of this court because, *inter alia*, it

acted or intends to act under color of Virginia law and within the geographic confines of the

Commonwealth of Virginia and the Western District of Virginia.

## VENUE

8.      This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C.

§ 1391.  The actions complained of in this Complaint took place or will take place within

Culpeper County, Virginia, and the relief sought is to take effect there.  Venue is therefore

proper in this Court.

## PARTIES

### PLAINTIFFS JOHN R. AND CYNTHIA TAFT GRANO

9.      John R. Grano, Jr. and Cynthia Taft Grano are the owners of the property at 25535 Somerville Road, Mitchells, Virginia 22729 in Culpeper County, Virginia, having acquired the property in 1990 from Robert F. Taft.

10.     The Granos have standing to challenge the actions taken by the Defendant. The Granos have been injured-in-fact by Defendant's actions, and are subject to immediate and substantial risk of prospective harm. *Duke Power Co. v. Carolina Env. Study Group, Inc.*, 438 U.S. 59, 71 n.15 (1979) (Declaratory Judgment Act "allows individuals threatened with a taking to seek a declaration of the constitutionality of the disputed governmental action before potentially uncompensable damages are sustained"); *Beck v. McDonald*, 848 F.3d 262, 275 (4th Cir. 2017) ("we may also find standing based on a 'substantial risk' that the harm will occur.").

11.     The Statute has already unconstitutionally rewritten the Granos' 1989 Electric Distribution Easement with REC, resulting in the divestment of Granos' property rights, including the right to exclude, without process or condemnation, resulting in injury-in-fact to the Granos. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982) ("The power to exclude has traditionally been considered one of the most treasured strands in an owner's bundle of property rights.")

12.     Further REC purportedly believes it may exercise those rights at its discretion by physically invading the Granos' property to install and maintain broadband or communications not permitted under the Easement, as it has previously done, representing more than a substantial risk that further harm will occur.

## DEFENDANT

13.     Rappahannock Electrical Cooperative is a private nonstock corporation, and utility consumer services cooperative, organized under the laws of the state of Virginia and a "person" within the meaning of 42 U.S.C. § 1983.

14.     REC has been delegated a limited power of eminent domain for the sole purpose of condemning property for the transmission and distribution of "energy" as a "utility consumer services cooperative." *See* Virginia Code §§ 56-231.15, 56-231.23, 56-231.43.

15.     Upon information and belief, at all times relevant, Defendant REC acted and intends to continue acting, under color of state law.

16.     For purposes of the claims asserted, Defendant REC's actions are "state action" within the meaning of the Fourteenth Amendment to the U.S. Constitution. *See Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1974); *Blum v. Yaretsky*, 457 U.S. 991, 1004–05 (1982); *Conner v. Donnelly*, 42 F.3d 220, 223–24 (4th Cir. 1994). REC has been granted limited powers of eminent domain, and is regulated by the Virginia State Corporation Commission.

## FACTS

### BACKED BY CENTURIES OF VIRGINIA PROPERTY LAW, THE 1989 ELECTRIC DISTRIBUTION EASEMENT LIMITED REC'S USE OF THE GRANOS' PROPERTY STRICTLY TO THE GRANTED USE

17.     In 1989, the Granos' predecessor in interest granted REC an express easement on the Granos' Property allowing REC to "operate and maintain an electric distribution system." A copy of the 1989 Electric Distribution Easement is attached hereto as Exhibit 2.

18.     The 1989 Electric Distribution Easement grants REC an electric distribution easement with right of apportionment. *See* Exhibit 2.

19.     "An easement is a privilege held by one landowner to use and enjoy certain property of another in a particular manner and for a particular purpose. . . . In resolving a dispute between landowners regarding the terms of an easement that is granted or reserved expressly by deed, we apply the customary rules governing the construction of written documents.  Thus, we ascertain the rights of the parties from the words set forth in their deeds." *Anderson v. Delore*, 278 Va. 251, 256–57, 683 S.E.2d 307, 309–10 (2009) (internal citations omitted).

20.     The Virginia Supreme Court has recognized that "for over a century," Virginia property law—consistent with centuries of common law of the United States and England—has affirmed that a grant of easement or any "covenants restricting the free use of land" are to be strictly construed. *Wetlands Am. Tr., Inc. v. White Cloud Nine Ventures, L.P.*, 291 Va. 153, 163, 782 S.E.2d 131, 137 (2016).

21.     The 1989 Electric Distribution Easement is an express limited easement defined by the four corners of the easement document.

22.     The 1989 Electric Distribution Easement specifically defines and limits the rights conveyed to REC by the Granos' predecessor in interest.

23.     The 1989 Electric Distribution Easement provides:

[G]rantor grants and conveys unto grantee, its successors and assigns, the perpetual right, privilege and easement of right of way over, under, upon and across the land grantor as shown and designated on the attached Schedules "A" and "B" consisting of a drawing dated September 15, 1989, hereto attached and made part of this Agreement, to construct, operate and maintain an electric distribution system including all appurtenances and attachments desirable in connection therewith. The facilities constructed hereunder shall remain the property of the grantee.

The facilities to be constructed will be overhead and underground and consist of the installation of primary and service conductors, poles, guy supports, pad mount transformers, sectionalizing cabinet, conduit and appurtenances on the lands of granted as shown on the aforementioned drawing. Right of way widths shall be forty (40) feet for overhead and fifteen (15) feet for underground.

(emphasis added).

8

24.     "[E]asements grant only nonpossessory rights of use limited to the purposes specified in the easement agreement". *United States Forest Serv. v. Cowpasture River Pres. Ass'n*, 140 S. Ct. 1837 (2020).

25.     The rights conveyed to REC are strictly limited to the uses granted in the easement.  *See Stephen Putney Shoe Co. v. Richmond, F. & P.R. Co.*, 116 Va. 211, 217, 81 S.E. 93, 96 (1914).

26.     The 1989 Electric Distribution Easement did not covey to REC the right to use the Granos' Property for laying or maintaining fiber optic cable or any other broadband or communications instrumentalities other than those which are "appurtenan[t] and attach[ed]" to an "electric distribution system."  *See* Exhibit 2.

27.     "[N]o use may be made of the easement, different from that established when the easement was created, which imposes an additional burden on the servient estate." *Shooting Point, L.L.C. v. Wescoat*, 265 Va. 256, 266, 576 S.E.2d 497, 503 (2003); s*ee also Collins v. Fuller*, 251 Va. 70, 72, 466 S.E.2d 98, 99 (1996); *Hayes v. Aquia Marina, Inc*., 243 Va. 255, 258, 414 S.E.2d 820, 822 (1992); *Cushman Virginia Corp. v. Barnes*, 204 Va. 245, 253, 129 S.E.2d 633, 639–40 (1963) (citing *First Nat. Tr. & Sav. Bank v. Raphael*, 201 Va. 718, 723, 113 S.E.2d 683, 687 (1960); *Wagoner v. Jack's Creek Coal Corp*., 199 Va. 741, 744, 101 S.E.2d 627, 629 (1958); *Vance v. Davis*, 195 Va. 730, 737, 80 S.E.2d 396, 400 (1954); Ribble, 1 *Minor on Real Property* § 107, at 146 n. 2 (2d ed. 1928); 17A Am. Jur., *Easements*, § 119 at 727 (2016); Anno. 130 A.L.R. 768 (1941)).

28.     Broadband and communications provision and expansion are not the operation and maintenance of an electric distribution system. See, *e.g*., *City of Orlando v. MSD-Mattie, L.L.C.*, 895 So. 2d 1127, 1129-30 (Fla. Dist. Ct. App. 2005) ("[A] fiber optic cable is not an

9

'electric transmission line.' . . . the scope of an easement is defined by what is granted, not by what is excluded, and all rights not granted are retained by the grantor.") (internal citations omitted).[2]

29.     "[If] the conveyance limits exclusive use of all or part of the servient estate *to a particular purpose* . . . the servient landowner retains the right to use the land in ways not inconsistent with the uses granted in the easement." *Walton v. Capital Land, Inc.*, 252 Va. 324, 326–27, 477 S.E.2d 499, 501 (1996) (emphasis in original) (internal citations omitted).

30.     The Granos substantially and materially relied on the express terms of the 1989 Electric Distribution Easement and above-referenced Virginia law when they purchased the Property in 1990 from Robert F. Taft.

31.     The Granos' property rights, apart from those explicitly granted under the 1989 Electric Distribution Easement, are vested under Virginia law.

32.     Easements are contracts under Virginia law. *See, e.g.*, *William S. Stokes, Jr., Inc. v. Matney*, 194 Va. 339, 343, 73 S.E.2d 269, 271 (1952).

33.     Courts will not rewrite contracts; parties to a contract will be held to the terms upon which they agreed. *Bank of Southside Virginia v. Candelario*, 238 Va. 635, 640, 385 S.E.2d 601, 603 (1989).

---

[2] Whereas electrical power traditional telephone lines involve the transmission of electrical current or signals over a conductive medium (like copper wire), Fiber-optic systems transmit information using "pulses of light" through "strands of fiber" (glass or plastic). Fiber optic systems do not relay "energy" in any meaningful sense, other than as an incidental byproduct of their primary goal of relaying digital data. *See Fiber Optics Definition*, Verizon, Inc. https://www.verizon.com/info/definitions/fiber-optics/.

**BY EXPANDING THE SCOPE OF USE OF THE 1989 ELECTRIC DISTRIBUTION EASEMENT, VIRGINIA CODE § 55.1-306.1 MATERIALLY ALTERED ESTABLISHED PROPERTY LAW AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THE 1989 ELECTRIC DISTRIBUTION EASEMENT**

34.     During its 2020 session, the Virginia General Assembly passed and the Governor signed Virginia Code § 55.1-306.1, which took effect on July 1, 2020.  The text of the statute is attached hereto as Exhibit 3.

35.     Virginia Code § 55.1-306.1(B)(1) states that "[i]t is the policy of the Commonwealth that: . . . Easements for the location and use of electric and communications facilities may be used to provide or expand broadband or other communications services[.]"

36.     Virginia Code § 55.1-306.1 defines "easement" as "an existing or future occupied electric distribution or communications easement with right of apportionment."  *See* Va. Code § 55.1-306.1.

37.     Virginia Code § 55.1-306.1(B)(2) declares that the "use of easements . . . to provide or expand broadband or other communications services is in the public interest."

38.     Virginia Code § 55.1-306 does not require the owner of the dominant interest (here, REC) to purchase, to institute eminent domain proceedings or to otherwise take affirmative steps to acquire fiber optic rights from the Granos, or provide them payment for this new use of their property.

39.     Virginia Code § 55.1-306.1(B)(3) declares that the "installation, replacement, or use of public utility conduit, including the costs of installation, replacement, or use of conduit of a sufficient size to accommodate the installation of infrastructure to provide or expand broadband or other communications services, is in the public interest."

40.     Virginia Code § 55.1-306.1(B)(6), however, also states that "[n]othing in this section shall be deemed to make the use of an easement for broadband or other communications

services, whether appurtenant, in gross, common, exclusive, or nonexclusive, a public use for the purposes of § 1-219.1 (specifically limiting the power of eminent domain), or other applicable law."

41.     Virginia Code § 55.1-306.1 (D) declares that "the installation and operation of broadband or other communications services within any easement shall be deemed, as a matter of law, to be a permitted use within the scope of every easement."

42.     Virginia Code § 55.1-306.1 allows any existing electrical or communications easement, including the 1989 Electric Distribution Easement, to be used to install fiber optic cable and states as a matter of law that:

> The use of easements, appurtenant or gross, to provide or expand broadband or other communications services (i) does not constitute a change in the physical use of the easement, (ii) does not interfere with, impair, or take any vested or other rights of the owner or occupant of the servient estate, (iii) does not place any additional burden on the servient estate other than a de minimis burden, if any; (iv) has value to the owner or occupant of the servient estate greater than any de minimis impact.

Va. Code § 55.1-306.1(B)(4).

43.     Virginia Code § 55.1-306.1(B)(5) declares that "installation and operation of broadband or other communications services within easements, appurtenant or gross, are merely changes in the manner, purpose, or degree of the granted use as appropriate to accommodate a new technology."

44.     Despite existing Virginia case law to the contrary, Virginia Code § 55.1-306.1(D) states that "[a]bsent any express prohibition on the installation and operation of broadband or other communications services in an easement that is contained in a deed or other instrument by which the easement was granted, the installation and operation of broadband or other communications services within any easement shall be deemed, as a matter of law, to be a

permitted use within the scope of every easement for the location and use of electric and communications facilities."

45.     Virginia Code § 55.1-306.1(E) states that "[s]ubject to compliance with any express prohibitions in a written easement, any incumbent utility or communications provider may use an easement to install, construct, provide, maintain, modify, lease, operate, repair, replace, or remove its communications equipment, system, or facilities, and provide communications services through the same, without such incumbent utility or communications provider paying additional compensation to the owner or occupant of the servient estate or to the incumbent utility, provided that no additional utility poles are installed."

46.     Virginia Code § 55.1-306.1(E) states that "any incumbent utility or communications provider may use an easement to install, construct, provide, maintain, modify, lease, operate, repair, replace, or remove its communications equipment, system, or facilities, and provide communications services through the same, without . . . paying additional compensation to the owner or occupant of the servient estate." (emphasis added)

47.     Virginia Code § 55.1-306.1(I) permits recovery by a landowner solely through the mechanism of "trespass, or any claim sounding in trespass" for "actual damages," but not just compensation for rights taken, presumably because Virginia Code § 55.1-306.1(B)(4)(ii) declares as a matter of law that no rights are taken.  Section I further states that "[d]amages shall be based on any reduction in the value of the land" despite the fact that Virginia Code § 55.1-

306.1(B)(4)(iii-iv) declares as a matter of law that such easements have only a "de minimis" impact, and do not negatively impact value.[3]

48.     Virginia Code § 55.1-306.1(I), together with Virginia Code § 55.1-306.1(B)(4) provide a singular, constrained and illusory remedy for relief while simultaneously preventing recovery under that approved remedy.

49.     Virginia Code § 55.1-306.1(I) forbids landowners from seeking injunctive relief.

50.     Virginia Code §§ 55.1-306.1(R-T) limits a property owner's opportunity for redress even further, with strict statutes of limitation and notice requirements, even for the constrained and illusory causes of action acknowledged in Virginia Code § 55.1-306.1(I).

51.     Virginia Code § 55.1-306.1, on its face, rewrites all existing easement contracts across Virginia to add additional rights not bargained for to the dominant estate and seizing them from the servient estate.

52.     The only owners effected by Virginia Code § 55.1-306.1 are those who are encumbered by an electric distribution or communication easement which does not contain the right to place and operate broadband, which is facially unconstitutional.

53.     On properties where easements have been granted containing the right to place and operate fiber optic lines, Virginia Code § 55.1-306.1 has no effect.

---

[3] For well over 100 years, the Supreme Court has recognized that it is illegitimate for a legislature to make such determinations, because the amount of just compensation is a judicial question. *See Monongahela Nav. Co. v. United States*, 148 U.S. 312, 327 (1893) ("The legislature may determine what private property is needed for public purposes; that is a question of a political and legislative character. But when the taking has been ordered, then the question of compensation is judicial. It does not rest with the public, taking the property, through congress or the legislature, its representative, to say what compensation shall be paid, or even what shall be the rule of compensation. The constitution has declared that just compensation shall be paid, and the ascertainment of that is a judicial inquiry.").

54.     As applied to the Plaintiffs, Virginia Code § 55.1-306.1 adds new and additional terms to the 1989 Electric Distribution Easement, assigning REC new rights and taking those same rights away from the Granos.

55.     Virginia Code § 55.1-306.1, as applied to the Plaintiffs, further burdens the easement area defined in the 1989 Electric Distribution Easement and the entire servient estate.

56.     Virginia Code § 55.1-306.1 grants REC a right to use the 1989 Electric Distribution Easement for a different use from that defined in the 1989 Electric Distribution Easement, which imposes an additional burden on the servient estate, the Granos' property.  *See* Va. Code § 55.1-306.1 (D) ("[T]he installation and operation of broadband or other communications services within any easement shall be deemed, as a matter of law, to be a permitted use within the scope of every easement").

57.     "[A] cable can rightfully occupy the easement to serve the purpose authorized in the easement. But that cable cannot also serve the general public for purposes not authorized by the easement. That additional use—here, [Electric Company's] use for public-serving commercial telecommunications unrelated to electric transmission—is an expanded use . . ." *Barfield v. Sho-Me Power Elec. Coop.*, 852 F.3d 795, 802 (8th Cir. 2017).

58.     Use for provision and expansion of broadband and communications services is not reasonably necessary for operation and maintenance of an electric distribution system.  *See, e.g.*, *CenterPoint Energy Houston Elec. LLC v. Bluebonnet Drive, Ltd.*, 264 S.W.3d 381, 389 (Tex. App. 2008) ("No rights pass to the easement holder by implication except those that are 'reasonably necessary' to enjoy the rights that the easement grants expressly.  Accordingly, if the grant expressed in the easement cannot be construed to apply to a particular purpose, a use for that purpose is not allowed.") (internal citations omitted).

59.     Virginia Code § 55.1-306 thus confiscates, without compensation, private property rights to exclude unpermitted users and uses, the right of landowners to sell the right to install and operate fiber optic cable and other uses of their land that are not for "electric power" easements.  The Statute takes from the landowners rights that had been reserved unto the landowner upon the creation of the 1989 Easement, while simultaneously declaring, as a matter of law, that the additional use "does not . . . take any vested or other rights" and regardless "has value . . . greater than any de minimis impact."  Va. Code § 55.1-306.1(B)(4).  Virginia Code § 55.1-306.1 serves as an end-run around the constitutional mandate for just compensation and centuries of standing property law.  This is what has occurred as between the Granos and REC.

60.     Virginia Code § 55.1-306.1 also impairs and rewrites the terms of easements, including the 1989 Electric Distribution Easement, by allowing the dominant estate holders (REC) to use the easement and the servient estate (the Granos' property) for a use different from that established by the bargained-for easement (the 1989 Electric Distribution Easement), which imposes an additional burden on the servient estate.

### REC: WE CAN "EASILY JUST WAIT UNTIL JULY 1 TO PROCEED" – THE ATTEMPTED 2020 FIBER OPTIC EASEMENT

61.     On December 18, 2019, REC and Orange County, Virginia announced a partnership to construct and lease fiber optic cable.  The announcement included "800 miles of planned [fiber optic] construction."  A press release with the announcement is attached hereto as Exhibit 4 ("2019 Press Release").  A further Broadband Position Statement (last updated on June 17, 2020) is also included in Exhibit 4 at page 2.

62.     Before July 1, 2020, REC approached the Granos seeking to replace or rewrite the 1989 Electric Distribution Easement with a new easement that would expand REC's rights to include "the purpose of installing constructing, operating and maintaining fiber optic conduit and

cables and/or related telecommunication materials and lines."  The proposed fiber-optic easement is attached as Exhibit 5 ("Attempted 2020 Fiber Optic Easement").

63.     The Attempted 2020 Easement would have superseded the 1989 Electric Distribution Easement with an "[e]asement[] for the location and use of electric . . . facilities . . . to provide broadband or other communications services."  Va. Code § 55.1-306.1(B)(1); *see* Exhibit 5 at 1.

64.     REC did not attempt to exercise eminent domain, and the Granos were under no obligation to accept REC's offer to purchase a new easement with an expanded or different scope of use, or to accept its offer of payment.

65.     After negotiating with REC as to language and the value of the additional rights REC sought in the Attempted 2020 Fiber Optic Easement, the Granos ultimately refused REC's offer, and did not convey any additional rights to REC.

66.     In April, 2020 REC informed the Granos of the newly-signed Virginia Code § 55.1-306.1, and indicated the offer of compensation for the Attempted 2020 Fiber Optic Easement was merely a "good faith gesture" and that REC could "easily just wait until July 1 to proceed" without reaching a deal or paying compensation for the very rights it was then seeking to acquire through negotiation.

67.     REC further informed the Granos that when the Statute became effective on July 1, 2020, the "clear language of the statute" "allows [REC] to incorporate telecommunications or broadband facilities into their current electric utilities all within the casement that currently encumbers [the Granos'] property," and to do so without paying the Granos.

68.     In anticipation of exercising these purported rights REC installed fiber optic equipment and facilities on properties adjoining the Granos' property.

69.     Upon information and belief, in anticipation of exercising these purported rights, REC installed and buried conduit to be used for fiber-optic cable on the Granos' Property.  To the best knowledge of the Plaintiffs this conduit, installed pursuant to the rights purportedly conveyed to REC by the statute, remains on the property in violation of REC's existing easement.

70.     In anticipation of exercising these purported rights, REC further affixed appurtenances to allow it to run fiber optic cables on some poles within its easement on the Granos' property.  *See* Exhibit 1 (showing REC owned poles on the Granos' property in the REC easement affixed with yellow "wheels" and a green "pull cord spool" used for stringing fiber optic lines).  These appurtenances have since been removed, but REC has not relinquished any of its purported rights to replace them.

71.     REC imminently intends to and may already have begun installing or allowing others to install fiber optic cable within its easement corridor in Culpeper County and Orange County.  Based on the above, and on information and belief, as of July 1, 2020, REC purportedly possesses, and demonstrably believes it possesses on the Granos' property, by virtue of Virginia Code § 55.1-306.1, the right to lay, operate, and maintain broadband and communications systems, including fiber-optic cable among other things not granted in the 1989 Electric Distribution Easement.

72.     At no point has REC purchased, condemned or otherwise acquired from the Granos any of the new property rights it now seeks to use, nor has REC paid just compensation.

73.     At no point have the Granos conveyed or agreed to convey to REC any rights beyond those contained in the 1989 Electric Distribution Easement.

74.     In the absence of the 1989 Electric Distribution Easement, REC would have no right or ability to enter, use, or otherwise trespass on the Granos' property.  The 1989 Electric Distribution Easement remains the sole document defining REC's rights on the Granos' property and governing the easement relationship between REC and the Granos.

75.     As of July 1, 2020 the Granos have lost the right to exclude others from placing fiber optic lines, broadband or communications systems on their property.

76.     As of July 1, 2020 the Granos have lost the exclusive right to place fiber optic lines, broadband or communications systems on their own property in REC's easement, or assign the right to others.

77.     As of July 1, 2020 the title to the Granos property has been encumbered by new easement rights without their consent and without any process sanctioned by the U.S. Constitution.

## FACTS SUPPORTING DECLARATORY RELIEF

78.     There exists an actual, present, and justiciable controversy between the Granos and the Defendant concerning the constitutionality of Virginia Code § 55.1-306.1 both on its face and as applied to the Granos.

79.     A declaration from this Court would settle the issue.

80.     A declaration would also serve a useful purpose in clarifying the legal issues in dispute.

81.     This controversy is ripe for judicial determination, and declaratory relief is necessary and appropriate so that the parties may know the legal rights and obligations that govern their present and future conduct regarding the Granos' property and the 1989 Electric Distribution Easement.

82.     Declaratory relief is necessary and appropriate so that the Granos' property rights are protected and so that REC acts in conformity with the 1989 Electric Distribution Easement and the U.S. Constitution, specifically the Fifth and Fourteenth Amendments.

83.     The need is immediate as REC now allegedly possesses, has used, and has declared its intent to use, the rights which Virginia Code § 55.1-306.1 unconstitutionally purported to convey to REC on July 1, 2020.

84.     There is a substantial risk of harm to the Granos property interests absent declaratory relief. *See Beck v. McDonald*, 848 F.3d 262, 275 (4th Cir. 2017); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 432–33, 133 S. Ct. 1138, 1160–61, 185 L. Ed. 2d 264 (2013)

85.     A declaratory statement from the Court will prevent imminent future disputes between the parties, and harm to the Granos, as well as numerous other property owners impacted by the unconstitutional Statute.

### FACTS SUPPORTING PERMANENT INJUNCTIVE RELIEF

86.     The Granos have suffered an irreparable injury by the loss of their rights under the Statute.  REC, under the color of state law, and without bargaining through contract acted upon those rights, and is still acting upon them.

87.     There is no adequate remedy at law, because the statute specifically prevents claims for just compensation through inverse condemnation (which do not "sound in trespass" in Virginia), providing instead a remedy which is, by design, futile and illusory.  *See* Va. Code § 55.1-306.1(I).

88.     The balance of equities is in favor of the Granos because granting an injunction results in REC losing only rights and advantages gained by unconstitutional means and the Granos gaining nothing they do not already lawfully possess.

89.     A preliminary injunction is in the public interest as numerous other holders of electric and communications easements, may attempt to take unconstitutional action against other landowners under Virginia Code § 55.1-306.1.

90.     An injunction serves as notice to the holders of other similar easements that, both on its face and as applied, Virginia Code § 55.1-306.1, is an unconstitutional justification for depriving owners of the underlying property of their rights and would prevent further constitutional violations from occurring under color of the Statute.

### CLAIMS FOR RELIEF

### COUNT 1: DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS OF LAW (SUBSTANTIVE DUE PROCESS), 42 U.S.C. § 1983 (DECLARATORY AND INJUNCTIVE RELIEF)

91.     The Granos incorporate the foregoing allegations as if re-alleged herein.

92.     The Granos possess property and private property within the meaning of the terms in the Due Process Clauses of both the Fifth and Fourteenth Amendments to the United States Constitution.

93.     Easements are specific grants for specific purposes and are narrowly construed, with all additional rights retained to the owner of the underlying land.  *See United States Forest Serv. v. Cowpasture River Pres. Ass'n*, No. 18-1584, 2020 WL 3146692, at *5 (U.S. June 15, 2020) ("[E]asements grant only nonpossessory rights of use limited to the purposes specified in the easement agreement.").

94.     The specific purpose of, and thus the only rights conveyed by, the 1989 Electric Distribution Easement was to install, operate and maintain an electric distribution system in accordance with the 1989 Electric Distribution Easement's express terms.  *See* Exhibit 2.

95.     The Granos retained the property right to prevent REC from using the 1989 Electric Distribution Easement for any purposes other than those specifically granted in the 1989 Electric Distribution Easement.

96.     The Granos retained the property right to exclude REC and others from the 1989 Electric Distribution Easement for purposes other than those specifically granted in the easement.

97.     The Granos retained the property right to use the 1989 Electric Distribution Easement area in any way that did not interfere with REC's specifically granted rights in the 1989 Electric Distribution Easement.

98.     The Virginia General Assembly has passed a law by which it has taken the Granos' property, in contravention of the Fifth and Fourteenth Amendments.

99.     The Granos never granted REC a right to install fiber optic lines or any other uses but electric distribution in the 1989 Electric Distribution Easement, and REC has never acquired such rights.

100.    In the absence of Virginia Code § 55.1-306.1, REC would have no basis to enter or use the Granos' property in any way inconsistent with strict terms of use in the 1989 Electric Distribution Easement.

101.    The Granos never granted REC a right to allow others to install fiber optic lines in the 1989 Electric Distribution Easement and REC did not possess such rights prior to the effective date of the Statute.

102.    On July 1, 2020, Virginia Code § 55.1-306.1 became effective and conveyed from the Granos to REC the right to itself or to allow others to lay fiber-optic cable on the property, and deprived the Granos of constitutionally-protected property interests, without a

reasonable basis, without due process, and without condemnation and payment of just compensation.

103.    REC has previously expressed its intent to exercise the rights unconstitutionally conveyed to it by Virginia Code § 55.1-306.1 without the Granos receiving due process of law, and has acted on that intent.  *See* ¶¶ 61-71.

104.    The Defendant's actions under color of Virginia Code § 55.1-306.1 are arbitrary and capricious and go beyond a legitimate interest; and no procedures could cure the deficiency.

105.    The arbitrary and capricious divestment under color of Virginia Code § 55.1-306.1 of the Granos long-held property rights while denying them the opportunity for the protections of eminent domain procedures (including notice, a meaningful opportunity to be heard (including a jury determination of just compensation) by law is, by design, not able to be addressed by any normal post-deprivation remedy (*e.g.*, quiet title, inverse condemnation, for example).

106.    Virginia Code § 55.1-306.1 declares as a matter of law that the rights taken do not have any substantive value themselves nor an effect on the value of the remaining property and redefines the rights taken in previous easements on an ad hoc basis.  No inverse condemnation, for example, can be sought as Virginia Code § 55.1-306.1(B)(4) explicitly says as a matter of law that the additional rights have *de minimi*s impact and are of no value.  No trespass or quiet title claims can be made as Virginia Code § 55.1-306.1 gives legal sanction to the seizure of the Granos' property rights.

107.    Virginia Code § 55.1-306.1 arbitrarily, capriciously, and irrationally divests a court from its constitutionally-mandated role in determining just compensation.  *See Monongahela Nav. Co. v. United States*, 148 U.S. 312, 327 (1893) ("The legislature may

determine what private property is needed for public purposes; that is a question of a political and legislative character.  But when the taking has been ordered, then the question of compensation is judicial.  It does not rest with the public, taking the property, through congress or the legislature, its representative, to say what compensation shall be paid, or even what shall be the rule of compensation.  The constitution has declared that just compensation shall be paid, and the ascertainment of that is a judicial inquiry.").

108.    The sole manner of redress in Virginia Code § 55.1-306.1(I) is restricted and illusory, as its outcome is determined by legal declarations in Virginia Code § 55.1-306.1(B).

109.    Regardless of Virginia Code § 55.1-306.1(I) allowing for actions that are in trespass or "sound[] in trespass," the statute makes no allowance for constitutionally mandated just compensation.

110.    There is no available constitutional process for Virginia Code § 55.1-306.1's arbitrary and capricious divestment and conveyance to REC of the Granos' property rights.

111.    The Granos are requesting a declaratory judgment that the statute has unconstitutionally deprived them of property without due process of law, and is unconstitutional both on its face, and as applied.  The Granos are also seeking a permanent injunction prohibiting REC's exercise of any of the rights unconstitutionally divested from the Granos and to prohibit the Defendant from taking any action under the purported authority of the Statute that would interfere or otherwise infringe the Granos' property rights described herein.

## COUNT 2: DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS OF LAW (PROCEDURAL DUE PROCESS), 42 U.S.C. § 1983 (DECLARATORY AND INJUNCTIVE RELIEF)

112.    The Granos incorporate the foregoing allegations as if re-alleged herein.

113.    The Granos possess property and private property within the meaning of the terms in the Due Process Clauses of both the Fifth and Fourteenth Amendments to the United States Constitution.

114.    Both on its face and as applied, Virginia Code § 55.1-306.1 deprived the Granos of their property rights without notice, a hearing, or an appeal.  It divests the Granos long-held property rights while denying them the opportunity for the protections of eminent domain procedures (including notice, a meaningful opportunity to be heard (including a jury determination of just compensation).

115.    The procedures employed were constitutionally inadequate.  The Fifth Amendment (incorporated to the states under the Fourteenth Amendment) to the U.S. Constitution guarantees that "private property" shall not "be taken for public use, without just compensation."  Under color of Virginia Code § 55.1-306, REC has taken the Granos' property, and the Granos are under the threat of having their property taken, because Virginia Code § 55.1-306.1 purports to add terms to an existing easement, without notice or hearing, and provides no avenue for the Defendant to provide constitutionally-required just compensation and damages before the taking.  *See* Virginia Code §§ 55.1-306.1(B)(4), (6).

116.    The only "process" provided for in Virginia Code § 55.1-306.1, was instantaneous, unappealable seizure, without any opportunity for condemnation by eminent domain and the payment of just compensation upon its effective date of July 1, 2020, which contravenes the Fifth Amendment.

117.    Virginia Code § 55.1-306.1 does not provide the Granos or any other landowner with a reasonable, certain, and adequate process to be divested of their property in accordance with the Constitution, eminent domain laws, or to obtain compensation.

118.    The Granos seek a declaratory judgment from this court stating that Virginia Code §§ 55.1-306.1 is unconstitutional both on its face and as applied by REC against the Granos as it violates the Fifth and Fourteenth Amendments.

119.    Plaintiffs are entitled to a declaratory judgment that, because Virginia Code § 55.1-306.1 does not provide advance assurance of adequate compensation in the event of a taking, it violates the Fifth Amendment as applied to the states and others who act under the authority of state law and exercise governmental powers.  The Declaratory Judgment Act "allows individuals threatened with a taking to seek a declaration of the constitutionality of the disputed governmental action before potentially uncompensable damages are sustained." *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 71, n. 15 (1978); *See E. Enterprises v. Apfel*, 524 U.S. 498, 521 (1998).

120.    Plaintiffs are also entitled to a permanent injunction prohibiting the Defendant from undertaking any action under the color of Virginia Code § 55.1-306.1 against the Granos' property, unless it acquires the rights through purchase or eminent domain proceedings are instituted to condemn the property, and reasonable, certain, and adequate assurances are made for providing just compensation and damages.

### COUNT 3: CONTRACTS CLAUSE
### (42 U.S.C. § 1983, OR ALTERNATIVELY U.S. CONST. ART. I, § 10)
### (DECLARATORY AND INJUNCTIVE RELIEF)

121.    The 1989 Electric Distribution Easement is a contract which sets out the rights and obligations of the Granos and REC.

122.    The Granos' contractual rights are vested rights under Virginia law.

123.    The Contracts Clause, Article I, Section 10 of the United States Constitution provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts."

124.    As described above, Virginia Code § 55.1-306.1 impairs the obligations of contracts, including the 1989 Electric Distribution Easement, and impairs the rights and obligations of parties to contracts, including the Granos and REC.

125.    Such impairment includes, but is not limited to, expanding and changing the scope of use of the 1989 Electric Distribution Easement to include use for fiber optic, allowing REC to use the 1989 Electric Distribution Easement for fiber optic, and prohibiting the Granos from excluding REC or any of its assigns from the Granos' property, prohibiting the Granos from making use of their property for any and all uses that are *not* electric distribution (including fiber optic), and generally impairing the Granos' contractual right to the receive benefit of its contract with REC.

126.    As a result of these actions, the Granos have suffered injury and are being irreparably harmed, and are entitled to a declaratory judgment that their contractual obligations are being unconstitutionally impaired, and a permanent injunction prohibiting all such prospective impairment.

127.    This claim is being raised in the alternative, both under 42 U.S.C. § 1983, and directly under Article I, Section 10 of the U.S. Constitution.  Plaintiff acknowledges that under circuit precedent (*Crosby v. Gastonia*, 635 F.3d 634 (4th Cir. 2011)), 42 U.S.C. § 1983 does not permit a claim for damages for a violation of the Contracts Clause.  But as acknowledged by the Fourth Circuit in Crosby, the circuit rule conflicts with the rule in at least one other federal circuit.  Plaintiffs thus certify that to the best of their knowledge, information, and belief, formed

after an inquiry reasonable under the circumstances, this claim is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation, and that the claim and this legal contention is warranted by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, John R. Grano, Jr. and Cynthia Taft Grano, pray that this Court enter judgment against the Defendant as follows:

A.      For an Order, pursuant to 28 U.S.C. § 2201, 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments, declaring that that:

      i)      On its face, Virginia Code § 55.1-306.1 violates the Fifth and Fourteenth Amendments of the U.S. Constitution by depriving property owners of a vested right to property without due process of law;

      ii)     On its face, Virginia Code § 55.1-306.1, impedes a valid private contract under Article I, Section 10 of the U.S. Constitution; or in the alternative that

      iii)    Virginia Code § 55.1-306.1, as applied to the Granos, is unconstitutional for the reasons stated under i) and ii); and thus that

      iv)     The rights transferred to REC pursuant to Virginia Code § 55.1-306.1 represent a deprivation of constitutional rights under the color of State law and that it is unconstitutional for REC or any other entity to place broadband and/or communications systems, including fiber-optic cable, on the Granos' property in reliance upon Virginia Code § 55.1-306.1, as REC has declared its intention to be.

B.      For an Order pursuant to 28 U.S.C. § 2202 permanently enjoining REC or any of

its agents, permittees or assigns from laying, operating, or maintaining fiber-optic cable on the

Granos' property without obtaining an easement through negotiation or condemnation

procedures which provide a mechanism for constitutionally mandated just compensation.

C.      For an award of reasonable attorneys' fees and costs expended on the Plaintiffs'

behalf pursuant to 42 U.S.C. §§ 1983 and 1988;

D.      Any other relief as the nature of the case and furtherance of justice and

constitutional principles may require.

**JOHN R. GRANO, JR.**
**CYNTHIA TAFT GRANO**


By:_____/s/_____
                              Joshua E. Baker

Joshua E. Baker, Esquire
VSB No.: 74302
jeb@waldoandlyle.com
Brian G. Kunze, Esquire
VSB No.: 76948
bgk@waldoandlyle.com
Russell G. Terman, Esquire
VSB No.: 93804
rgt@waldoandlyle.com
WALDO & LYLE, P.C.
301 W. Freemason Street
Norfolk, VA 23510
Telephone: (757) 622-5812
Facsimile: (757) 622-5815
*Counsel for Plaintiffs*

Robert H. Thomas *(Pro Hac Vice* requested)
California State Bar No.: 160367; Hawaii State Bar No.: 4610-0
rht@hawaiilawyer.com
DAMON KEY LEONG KUPCHAK HASTERT, LC
1003 Bishop Street, Suite 1600
Honolulu, HI 96813
Telephone: (808) 531-8031
Facsimile (808) 533-2242