UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| JOHN R. GRANO, JR. & CYNTHIA TAFT GRANO, <br>            *Plaintiffs*, <br> v. <br> RAPPAHANNOCK ELECTRIC COOPERATIVE, A Virginia Nonstock Corporation, <br>            *Defendant.* | CASE NO. 3:20-cv-65 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

Rappahannock Electric Cooperative ("REC") holds an easement on the Granos' property that grants REC a right of way to construct, operate, and maintain an electrical distribution system. In 2020, the Virginia legislature enacted Va. Code § 55.1-306, which purports to broaden the scope of existing electrical easements to include the right to use those easements for the installation and operation of broadband,[1] without further compensation to the landowner.

Plaintiffs John and Cynthia Grano, owners of the property, challenge the constitutionality of the new statute by seeking declaratory and injunctive relief under 42 U.S.C. § 1983 for three claims: (1) an arbitrary and capricious deprivation of property without due process of law (substantive due process), (2) a deprivation of property without procedural due process, and (3) a violation of the Contracts Clause. In response, REC filed a motion to dismiss under Rule 12(b)(1), for lack of jurisdiction, and under Rule 12(b)(6), for failure to state a claim. Dkt. 12.

---

[1] Broadband is a technology that delivers internet and network services. Recent broadband technology utilizes fiber optic cable which sends data at a faster rate. *See* Dkt. 1-4.

1

For the reasons stated herein, the Court will deny REC's Rule 12(b)(1) motion and grant REC's motion under Rule 12(b)(6), in part. The Court will grant REC's Rule 12(b)(6) motion as to counts 1 and 2, and will dismiss those counts, but will deny the motion as to the Contracts Clause violation alleged in count 3.

## I. Standard of Review

A motion to dismiss under Rule 12(b)(1) challenges a district court's subject matter jurisdiction. "The burden of establishing subject matter jurisdiction rests with the plaintiff." *Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015).

Rule 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim; it "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level," thereby "nudging claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court must take all facts and reasonable inferences in favor of the plaintiff, disregard any legal conclusions, and not credit any formulaic recitations of the elements. *See Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555, 557.

## II. Facts as Alleged

### A. The 1989 Agreement

The Granos have owned the property in Mitchells, Virginia since 1990. Dkt. 1 ¶ 9. In 1989, the property's previous owner granted REC an easement across the property. *Id.* ¶¶ 13, 17; *see* Dkt. 1-2. The contract grants REC "the perpetual right, privilege and easement of right of way over, under, upon and across [the property] to construct, operate and maintain an electric

2

distribution system including all appurtenances and attachments desirable in connection therewith," both "overhead and underground." Dkt. 1 ¶ 23; Dkt. 1-2. It also provides that the "facilities to be constructed" will "consist of the installation of primary and service conductors, poles, guy supports, pad mount transformers, sectionalizing cabinet, conduit and appurtenances . . . ."Dkt. 1-2.

### B. Virginia Code § 55.1-306.1

Va. Code § 55.1-306.1 took effect on July 1, 2020. *See* Dkt. 1-3. In short, § 55.1-306.1 provides that easements "for the location and use of electric and communications facilities may be used to provide or expand broadband or other communications services." *Id.* The crux of the statute is § 55.1-306.1(B)(4), which declares:

> The use of easements, appurtenant or gross, to provide or expand broadband or other communications services (i) does not constitute a change in the physical use of the easement, (ii) does not interfere with, impair, or take any vested or other rights of the owner or occupant of the servient estate, (iii) does not place any additional burden on the servient estate other than a de minimis burden, if any; (iv) has value to the owner or occupant of the servient estate greater than any de minimis impact.

And unless the easement has an "express prohibition on the installation and operation of broadband or other communications services," then any "installation and operation of broadband or other communications services . . . shall be deemed, as a matter of law, to be a permitted use within the scope of every easement for the location and use of electric and communications facilities." Va. Code § 55.1-306.1(D).

The statute does not require the utility company to purchase, to institute eminent domain proceedings, or to otherwise take affirmative steps to acquire fiber optic rights. Va. Code § 55.1-306.1(B)(3). Only if "additional utility poles are installed" is a utility company directed to pay additional compensation. Va. Code § 55.1-306.1(E). Otherwise, a utility company may use "an

3

easement to install, construct, provide, maintain, modify . . . communications equipment . . . and provide communications services through the same, without . . . paying additional compensation to the owner . . . of the servient estate." Va. Code § 55.1-306.1(E). The statute also limits recovery by landowners to actual damages for "trespass, or any claim sounding in trespass," and forbids landowners from seeking injunctive relief. Va. Code § 55.1-306.1(I).

### C. REC's Actions Prior to the Enactment of § 55.1-306.1

On November 19, 2019, REC contacted the Granos and asked permission to install fiber optic cable for broadband on their property. Dkt. 13-1.[2] In early December, REC installed a pair of 2-inch underground PVC conduits along the existing underground route on the property, as well as above-ground appurtenances for fiber optic cable. Dkt. 1 ¶¶ 69–70. REC did not install any fiber optic cable. *Id.* Over the next five months, REC and the Granos engaged in negotiations for a new easement for the fiber optic cable. Dkt. 13-1 ¶ 7; *see also* Dkt. 1 ¶¶ 62–65. REC sought to obtain either an updated easement agreement that included provisions related to fiber optics or a new easement specifically addressing fiber optic installation. Dkt. 13-1 ¶ 7; *see also* Dkt. 1-5.

REC informed the Granos that it preferred to negotiate a new easement instead of waiting to exercise statutory authority under Va. Code § 55.1-306.1 (effective July 1, 2020). Dkt. 13-1 ¶ 8. Indeed, an email from REC's counsel to the Granos stated "[REC] is not the type to be heavy handed and could easily wait until July 1 to proceed. However, [REC] want[s] to maintain a good relationship with its members. [REC] also believe[s] the telecommunication facilities benefit the

---

[2] REC submitted, as an exhibit to its motion to dismiss, a declaration of John Arp. John Arp is a Vice President at REC who is familiar with REC's dealings with the Granos. Dkt. 13-1 ¶ 1. At the hearing, the Granos did not object to the consideration of the declaration insofar as it related to the issues presented in this motion to dismiss. Evidence outside the pleadings, such as exhibits to a defendant's motion to dismiss, may be considered without converting a Rule 12(b)(1) motion into a summary judgment motion. *See Adams v. Baine*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Mims v. Kemp*, 516 F.2d 21, 23 (4th Cir. 1975).

4

entire community." *Id.*; *see also* Dkt. 1 ¶¶ 66–67.

Ultimately, the negotiations stalled, and REC pursued an alternative route that did not involve the Granos' property. Dkt. 13-1 ¶¶ 9–11. By the end of May 2020, REC had obtained easements from all affected property owners on REC's new route. *Id.* After receiving a permit for the alternate route in July, REC completed its construction in August 2020. *Id.* ¶ 15.

Prior to completion, REC informed the Granos that the alternate route had been selected and that it would bypass the Granos' property. *Id.* The Granos then asked REC when it would remove the temporary installation equipment which remained on their property from the December installation (the underground conduits and above-ground appurtenances). *Id.* ¶ 16. REC states that the Granos gave it permission to install and bury conduits for fiber optic cable. Dkt. 13-1 ¶¶ 6, 18. For their part, the Granos assert that REC installed the conduits "in anticipation of exercising [their] purported rights" under § 55.1-306.1, and they believe the conduits "remain[ ] on the property in violation of REC's existing easement." Dkt. 1 ¶ 69.[3] REC removed the above-ground appurtenances in July 2020; however, the below-ground conduits remain. Dkt. 13-1 ¶ 18. REC states that it has no future plans or intentions to place fiber optic cable on the property. *Id.* ¶ 19.

### III. Discussion

REC relies on two theories in its motion to dismiss. First, REC argues that the Court lacks subject matter jurisdiction. Second, REC contends that even if there is subject matter jurisdiction, the allegations in the Granos' complaint, taken as true, fail to demonstrate that REC acted under color of state law.

---

[3] The Granos do not bring a takings claim for physical intrusions of their property; their complaint, instead, focuses on the statute as violating their due process rights. *See infra* III(A)(2) note 5.

**A. Lack of Subject Matter Jurisdiction—Ripeness**

The ripeness doctrine addresses subject matter jurisdiction and "presents a threshold question [] of justiciability." *Scoggins v. Lee's Crossing Homeowner's Ass'n*, 718 F.3d 262, 269 (4th Cir. 2013) (internal citations and quotations omitted); *see Sansotta v. Town of Nags Head*, 724 F.3d 533, 548 (4th Cir. 2013). Specifically, ripeness "concerns the appropriate timing of judicial intervention." *Cooksey v. Futrell*, 721 F.3d 226, 240 (4th Cir. 2013) (quoting *Va. Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379, 389 (4th Cir. 2001)).

Whether a claim is ripe turns on the type of claim and the type of constitutional challenge a plaintiff has brought, i.e., a facial or an as-applied challenge. The Granos raise both facial and as applied challenges under substantive due process (count 1), procedural due process (count 2), and the contracts clause (count 3).

1. Facial Challenge

A facial challenge is ripe for consideration when it raises a purely legal question as to the constitutionality and validity of the statute in question.[4] *See Ballantyne Village Parking, LLC v. City of Charlotte*, 818 F. App'x 198, 203 (4th Cir. 2020). A facial challenge contends that any application of the statute is unconstitutional. *See also Klemic v. Dominion Transmission, Inc.*, 138 F. Supp. 3d 673, 684 (W.D. Va. 2015) ("Plaintiffs' facial challenges are fit for judicial review at this time. Such . . . challenges to regulation are generally ripe the moment the challenged regulation or ordinance is passed.") (internal quotations and citation omitted).

Here, the Granos make a facial challenge to Va. Code § 55.1-306.1. Dkt. 1 at 28. Because

---

[4] A facial challenge under the substantive due process clause that claims arbitrary and capricious conduct does not need to meet the finality requirement. *Pietsch v. Ward Cnty.*, 446 F. Supp. 3d 513, 531 (D.N.D. 2020); *see Clayland Farm Enters., LLC v. Talbot Cnty.*, 672 F. App'x 240, 244 (4th Cir. 2016). The finality requirement provides that an action taken with respect to land use must be final. *See Knick v. Township of Scott, Pennsylvania*, 139 S. Ct. 2162, 2169 (2019).

the Court is faced with a purely legal question as to the constitutionality and validity of an enacted statute, the Court concludes that the facial challenge is ripe. *See Yee v. City of Escondido, Cal.*, 503 U.S. 519, 532–35 (1992).

2. As-Applied Challenge

With respect to the Granos' as-applied challenge, the Court will apply general ripeness doctrine.[5, 6] Typically, the ripeness doctrine requires that the Court "balance the fitness of the issues for judicial decision with the hardship to the parties [by] withholding court consideration." *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006) (citation and internal quotations omitted). "A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Id.* Hardship "is measured by the immediacy of the threat and the burden imposed on the petitioner who would be compelled to act under threat of enforcement of the challenged law." *Id.* at 319 (internal quotations omitted). The threatened harm must be "immediate, direct, and significant." *Pearson v. Leavitt*, 189 F. App'x 161, 164 (4th Cir. 2006) (internal citation omitted). As with standing, the party bringing the suit bears the burden of proving ripeness. *Miller*, 462 F.3d at 316.

---

[5] REC cites general ripeness doctrine in their briefs to argue that the case is not yet ripe. Dkt. 13 at 12–13. The Granos do not cite any law as to the ripeness inquiry, but they also do not contest the application of general ripeness principles.

[6] Where a takings claim is brought, the ripeness inquiry is different and requires only that there be "a final decision to 'take,'" and "there is no other remedy to provide adequate compensation." Wright & Miller, Property Taking and Related Claims, 13B Fed. Prac. & Proc. Juris. § 3532.1.1 (3d ed.). It should be noted that the Granos do not assert a takings claim. At the hearing on this motion, the Granos' counsel specifically stated "I think it's important to say what this case is not about . . . this is not a case about a physical taking. This is not an inverse condemnation case. This is not a claim for just compensation. This is a due process claim . . . ." Hearing Transcript p. 16 at 3–8. Where due process and contracts clause claims are "factually and conceptually distinct," from any takings claim, courts apply general ripeness principles. *Schanzenbach v. Town of La Barge*, 706 F.3d 1277, 1281–83 (10th Cir. 2013); *see* Wright & Miller, Property Taking and Related Claims, 13B Fed. Prac. & Proc. Juris. § 3532.1.1 (3d ed.).

REC argues that the case is not ripe because "the action in controversy has not occurred" and that "there is no immediate threat" to the Granos or their rights. Dkt. 13 at 14. The Court disagrees. To be sure, even though REC chose and implemented an alternate route for its broadband—one that bypasses the Granos' property—the Granos suffered immediate harm when they lost their right to exclude. Dkt. 13-1 ¶¶ 8–17; *See Halverson v. Skagit Cnty.*, F.3d 1257, 1261 (9th Cir. 1994) ("[S]ubstantive due process is violated at the moment the harm occurs."). When the law became effective, the Granos suffered an impairment to their contractual rights under their 1989 easement agreement with REC. Dkt. 1 ¶ 125. These harms are compounded by the fact that Va. Code § 55.1-306.1 does not present the Granos with anything but an illusory post-deprivation remedy through an action for trespass that is limited to damages. *See* Va. Code § 55.1-306.1(I).

Whether REC exercised the right conferred upon it under the statute is beside the point. Significant in this case, is that, as alleged in the complaint, the law stripped the Granos of a paramount property right, altered their contractual agreement with REC, and failed to provide adequate post-deprivation remedies.

Thus, this is an instance where the threat of harm is "immediate, direct, and significant." *Pearson*, 189 F. App'x at 164. The Granos' injuries are not merely conjectural or hypothetical, they are actual. Accordingly, the Court concludes that the Granos' as applied challenge is ripe for review.

**B. Lack of Subject Matter Jurisdiction—Standing**

Article III standing requires that a plaintiff establish: (1) an injury-in-fact, (2) causation, and (3) redressability. *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017). To satisfy the injury-in-fact prong, a plaintiff bears the burden of showing he or she suffered a concrete and particularized invasion of a legally protected interest that is actual or imminent. *Id.* For causation,

a plaintiff must show a fairly traceable connection between the alleged injury-in-fact and the alleged conduct of the defendant. *Id.* Lastly, to meet the redressability prong, a plaintiff has to show that his injury will be remedied by the relief sought. *Id.*

Where a defendant brings a facial challenge to a plaintiff's standing, the defendant argues that "the complaint fails to allege facts upon which standing can be based, and the plaintiff is afforded the same procedural protection that exists on a motion to dismiss." *Wikimedia Found. v. NSA*, 857 F.3d 193, 208 (4th Cir. 2017). But where there is a factual challenge to plaintiff's standing, the defendant "contends that the jurisdictional allegations of the complaint are not true." *Id.*

1. Facial Challenge to Standing

When considering a facial challenge to standing, the sole question before the court is whether "the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

The Granos allege facts sufficient to satisfy Article III's standing requirements of injury-in-fact, causation, and redressability. Va. Code § 55.1-306.1 deprives the Granos of their property right to exclude broadband equipment, impairs the Granos' rights and obligations under the 1989 easement, and strips the Granos of any meaningful post-deprivation remedies. Dkt. 1 ¶¶ 121–27. Once § 55.1-306.1 went into effect, the Granos suffered harm. The statute purports to expand electric distribution or communications easements to include broadband as a matter of law, and relieve easement holders from paying compensation to the landowner for the transfer of their right of use. *See* Va. Code §§ 55.1-306.1(D)-(E). By encumbering the property, altering the existing easement, and precluding affected property owners from any meaningful just compensation remedies, the Granos suffered an injury-in-fact that is concrete and particularized. And because

9

the statue itself purportedly granted those rights to REC, the injury is fairly traceable to the company. The redressability prong is satisfied because their injury would be remedied by the injunctive relief the Granos request. For these reasons, the Court concludes that REC's facial challenge to the Granos' standing fails.

  2. Factual Challenge to Standing

REC makes a factual challenge to the Granos' standing, arguing that the Granos have not suffered an injury, based on the Declaration of John M. Arp. Dkt. 13-1. However, the Court finds that nothing in REC's declaration changes the analysis. The fact that REC installed fiber optics through an alternate route does not mean that the Granos were not injured. As explained, this is not a takings case where the injury happens upon some physical intrusion on the Granos' property. Instead, the injury here results from the enactment of Va. Code § 55.1-306.1 and the resulting injury is to the Granos' property and contract rights. Because the declaration does not change the Court's analysis, the Court finds that REC's factual challenge fails.

Accordingly, the Court concludes that the Granos have standing to bring this suit.

  C. **Declaratory Judgment Act**

REC also argues that the Court lacks jurisdiction under the Declaratory Judgment Act ("DJA") because no actual controversy exists. The DJA permits a federal court, in "a case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A declaratory action is appropriate if the dispute it presents is "definite and concrete, touching the legal relations of parties having adverse legal interests." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotations omitted). Such an action cannot be based on a "hypothetical state of facts." *Id.* While there is no bright line rule for determining

whether a case or controversy exists, "the question in each case is whether the facts alleged under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*

The Court concludes that this case presents an actual case or controversy and that the dispute "is definite and concrete, touching the legal relations of parties having adverse legal interests." *See White v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 913 F.2d 165, 167 (4th Cir. 1990) (quotations and citations omitted). Given the analysis provided under the ripeness and standing sections, the Court finds that a declaratory judgment is also appropriate here. An actual controversy exists because the Granos have suffered from (1) the loss of a property right, (2) a lack of a post-deprivation remedy, and (3) the alteration of an existing contract. In addition, the Court determines that declaratory relief is appropriate from a "prudential standpoint" because a declaratory judgment will serve a useful purpose in clarifying and settling the legal relations at issue in this case.

Therefore, the Court holds that the Granos have demonstrated that jurisdiction is appropriate under the DJA.

### D. Failure to State a Claim — § 1983 State Action

To state a claim under § 1983, "the conduct at issue must have occurred 'under color of' state law; thus, liability attaches only to those wrongdoers 'who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it.'" *Nat'l Collegiate Ath. Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988) (quoting *Monroe v. Pape*, 365 U.S. 167, 172 (1961)). A prima facie case under § 1983 requires that the defendant be a "state actor," or that the defendant acted "under color of state law." *Philips v. Pitt Cnty. Mem'l*

*Hosp.*, 572 F.3d 176, 180–81 (4th Cir. 2009) (citations omitted).

The Court applies a two-part approach when determining if action by a private party is fairly attributable to the state. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982). "First, the deprivation must be caused by the *exercise* of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." *Id.* (emphasis added). "Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.* The Supreme Court has "consistently held that a private party's joint participation" with the state is "sufficient to characterize that party as a 'state actor . . . .'" *Id.* at 941; *see Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978) ("[W]hatever else may also be necessary to show that a person has acted 'under color of [a] statute' for purposes of § 1983, . . . we think it essential that he act with the knowledge of and pursuant to the statute.") (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 170 (1970)). A deprivation of a constitutional right requires the defendant to commit an affirmative act, participate in another's affirmative act, or fail to perform an act which he is legally required to do, and which causes the deprivation of which the plaintiff complains. *See Rizzo v. Goode*, 423 U.S. 362, 370–71 (1976); *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).

Simply put, in this context, whether state action is fairly attributable to REC depends on whether the complaint sufficiently alleges that REC *took action*. It does not. Indeed, the Granos only allege that REC took action "[i]n anticipation of purported [] rights" conferred by the statute *prior* to its enactment, that "REC did not attempt to exercise eminent domain," and that after the statute's passage REC "purportedly possesses, and demonstrably believes it possesses" expanded rights. Dkt. 1 ¶¶ 64, 66–67, 70. REC received a right from the Commonwealth, but there are no allegations that REC took any action against the Granos in the exercise of that right. Acting under

state law requires a "a sufficiently close nexus between the State and the challenged *action* of the regulated entity so that the *action* of the latter may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350 (1974) (internal citations omitted) (emphasis added). The Granos have not alleged facts showing that REC took any action to exercise the rights granted by the statute's enactment, meaning any claim that state action is present is not plausible.[7]

Further, the statute itself is permissive in nature. While it purports to confer property rights automatically, REC has discretion to act on those rights. For instance, § 55.1-306.1(E) states that "any incumbent utility or communications provider *may* use an easement to install . . . .communications equipment . . . without . . . paying additional compensation . . . ." (emphasis added). Section (H) states that any incumbent utility "*may* grant or apportion" their rights under the easement. Va. Code § 55.1-306.1(H) (emphasis added). And section (K) provides requirements for communications companies who are "*making use of* an easement pursuant to this section . . . ." Va. Code § 55.1-306.1(K) (emphasis added).

Accordingly, considering the lack of any action on the part of REC, along with the discretionary nature of the Virginia statute, the Court concludes that the Granos fail to allege sufficient facts to show state action by REC. For this reason, the Court grants REC's motion to dismiss the § 1983 claims under Rule 12(b)(6).[8]

---

[7] The Granos also argue that there is state action, both because REC holds eminent domain power and because REC participated in the legislative drafting of the statue. Both arguments fail. First, REC never took action to use their limited statutory eminent domain power, and merely having authority to exercise that power does not, in and of itself, demonstrate any sort of action. *See Jackson*, 419 U.S. at 350–51. Second, lobbying efforts that result in legislation do not impute state action on private parties. *Single Moms, Inc. v. Montana Power Co.*, 331 F.3d 743, 748–49 (9th Cir. 2003), *cert. denied*, 540 U.S. 1180 (2004).

[8] Contracts Clause violations cannot give rise to a cause of action under § 1983 in the Fourth Circuit. *Crosby v. City of Gastonia*, 635 F.3d 634, 641 (4th Cir. 2011); *see Kaminski v.*

### E. Contracts Clause Violation

The Granos claim, in the alternative to their § 1983 Contracts Clause claim (count 3), a direct violation of the Contracts Clause under the Constitution. *See Andrews v. Anne Arundel Cnty., Md.*, 931 F. Supp. 1255, 1266–67 (D. Md. 1996), *aff'd*, 114 F.3d 1175 (4th Cir. 1997) (granting plaintiffs' motion for partial summary judgment as to their Contracts Clause claim, but entering judgment in favor of Defendants as to the § 1983 Contracts Clause claim). REC has not moved to dismiss the Granos' Contracts Clause claim pursuant to Rule 12(b)(6). REC only addresses the Contracts Clause in the context of their Rule 12(b)(1) arguments. Because the Court concluded that the Granos have standing, and that their claims are ripe, the Court will deny REC's motion as to count 3.

### IV. Conclusion

Accordingly, the Court will deny REC's Rule 12(b)(1) motion, but will grant REC's motion to dismiss, pursuant to Rule 12(b)(6), in part. The Court grants REC's motion as to counts 1 and 2, and will dismiss those counts, but will deny the motion as to the count 3 Contracts Clause violation. An appropriate order will issue.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion to all counsel of record.

Entered this \_\_\_4th\_\_\_ day of August, 2021.

*Norman K. Moon*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

---

*Coulter*, 865 F.3d 339, 347 (6th Cir. 2017) ("We join the Fourth Circuit and hold that an alleged Contracts Clause violation cannot give rise to a cause of action under § 1983.").