**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF VIRGINIA**
**Charlottesville Division**

JOHN R. GRANO, JR.

and

CYNTHIA TAFT GRANO,                             Civil Action No.:
                                                  3:20cv0065
            Plaintiffs,

v.

RAPPAHANNOCK ELECTRIC COOPERATIVE,
A Virginia Nonstock Corporation

and

COMMONWEALTH OF VIRGINIA

            SERVE:   Governor Ralph S. Northam
                     OFFICE OF THE GOVERNOR
                     Patrick Henry Building
                     1111 East Broad Street
                     Richmond, VA 23219

and

GOVERNOR RALPH S. NORTHAM,
in his official capacity as Governor
of the Commonwealth of Virginia,

            SERVE:   Governor Ralph S. Northam
                     OFFICE OF THE GOVERNOR
                     Patrick Henry Building
                     1111 East Broad Street
                     Richmond, VA 23219

            Defendants.

## AMENDED COMPLAINT

To the Honorable Judges of said Court:

        The Plaintiffs John R. Grano, Jr. and Cynthia Taft Grano (collectively hereinafter "the

Granos"), by counsel, pursuant to Fed. R. Civ. P. 15 and the Court's Order granting leave to

amend (ECF No. 53) file this Amended Complaint against Defendants Rappahannock Electric Cooperative (hereinafter "REC"), the Commonwealth of Virginia (hereinafter the "Commonwealth"), and Governor Ralph S. Northam, Governor of the Commonwealth of Virginia (herein after the "Governor"), for the unlawful deprivation of their constitutional property and contract rights under the color of state law, in violation of the U.S. Constitution's Due Process Clauses of the Fifth and Fourteenth Amendments, the Takings Clause of the Fifth Amendment, and the Contracts Clause of Article I, Section 10.  Certain of these claims are also being alleged as violations of 42 U.S.C. 1983.

By enacting Virginia Code § 55.1-306.1 (the "Statute") the Commonwealth and the Governor have radically rewritten Virginia property law without providing due process or compensation, and have *ex post facto* rewritten existing easement contracts and impaired obligations retroactively.  The Statute legislatively expands the allowable uses of REC's existing electric distribution easement on the Granos' property ("the 1989 Electric Distribution Easement") to allow the installation or maintenance of broadband or other communications services including fiber optic, resulting in a *per se* physical taking of the Granos' property.

Easements are, by definition, the grant of a right to use another's property only for the express purposes specified in the easement.  REC's 1989 Electric Distribution Easement is an express easement for the sole purpose of "operat[ing] and maintain[ing] an electric distribution system."  Before July 1, 2020, the date the Statute came into effect, the 1989 Easement did not permit REC to make any other uses of the Granos' property.  If REC wished to add another use, e.g., the installation or maintenance of broadband or other communications services, REC would have needed to acquire a new and different easement or otherwise secure the additional property

2

rights from the Granos.  Indeed, prior to the adoption of Virginia Code § 55.1-306.1, REC attempted to acquire the property from the Granos by purchase.

By enacting Virginia Code § 55.1-306.1, which became effective on July 1, 2020, the Commonwealth and the Governor have overturned centuries of established property law by rewriting existing or future electric distribution or communications easements, such as the Granos', to include, by fiat, "the installation and operation of broadband or other communications services[,] to provide or expand broadband or other communications services." *But see United States Forest Serv. v. Cowpasture River Pres. Ass'n*, 140 S. Ct. 1837 (2020) ("[E]asements grant only nonpossessory rights of use limited to the purposes specified in the easement agreement") (June 15, 2020).

The Statute ignores centuries of established property law and shortcuts the traditional and constitutional methods of acquiring rights through negotiation or authorized condemnation.  As of July 1, 2020, the Statute's effective date, the Commonwealth and the Governor have deprived the Granos of the right to prohibit others, including REC, from using their property and the 1989 Electric Distribution Easement for broadband or other communications services (which may hereinafter be referred to as "fiber optic") without recourse for the property rights the Statute transferred from the Granos to REC.  This is true for all landowners with existing electric distribution or communications easements, which easements do not specifically forbid the uses permitted by the Statute.

As of July 1, 2020, as a result of the Commonwealth's and the Governor's enactment of the Statute, REC and all other entities authorized under the Statute unconstitutionally possess the purported right to lay, operate, and maintain fiber-optic cable on the Granos' property under the newly-enacted Virginia Code § 55.1-306.1.  Accordingly, REC has foregone its recent attempt to

acquire a new easement and its offer of payment for the right to use the 1989 Electric Distribution Easement for the installation and operation of broadband or other communications services.  Instead, it has acquired these rights via the Commonwealth's and the Governor's actions under color—and by virtue—of the Statute, and REC and other entities now have the right to physically invade and use the Granos' property under color of the Statute.  The Statute renders the Granos powerless to forbid their access.  The rights that REC and others now possess were taken from the Granos by the Commonwealth of Virginia and the Governor through the approval and enactment of the Statute, which necessarily required the Governor's signature. REC has previously affixed appurtenances to allow it to run fiber optic cables on some poles within its easement, in anticipation of exercising its purported rights under the statute, and may return at any time.[1]

Accordingly, the Granos seek declaratory relief, pursuant to 28 U.S.C. § 2201(a) that Virginia Code § 55.1-306.1, both on its face and as applied to the Granos, represents a deprivation of property without due process of law in violation of the Fifth and Fourteenth Amendments; impairs contracts, including their contract with REC, in violation of the Contract Clause, Article I, Section 10; and effected a physical  taking of their private property in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution.  The Granos further seek a permanent injunction against the Commonwealth and the Governor, pursuant to 28 U.S.C. § 2202, preventing the application and enforcement of the Statute as it has effected an unconstitutional taking of their property "once § 55.1-306.1 went into effect."  *See* ECF 47 at 9.

---

[1] Exhibit 1 shows REC owned poles on the Granos' property in the REC easement.  Visible in the picture are a yellow "wheel" onto which fiber optic line is intended to be strung and a green "spool" with a "pull cord" used for stringing fiber optic lines.  REC affixed these appurtenances to the poles as it prepared to run fiber optic cable, and had affixed these same appurtenances to poles within the same easement on neighboring properties.  REC later removed this equipment, but has in no way relinquished its purported rights under the statute to return at any time to make use of the Granos' property.

The Granos respectfully petition the Court for relief pursuant to Federal law, and in support thereof, allege the following:

### NATURE OF ACTION, VENUE
### AND JURISDICTION NATURE OF ACTION

1.       This case is a civil action arising under the U.S. Constitution; the Declaratory Judgment Act, 28 U.S.C. § 2201 *et. seq.* (and Fed. R. Civ. P. 57); and the Civil Rights Act of 1871 (the Anti-Ku Klux Klan Act), 42 U.S.C. §§ 1983 and 1988, in which the Granos seek declaratory and injunctive relief that Virginia Code § 55.1-306.1, both on its face and as applied to the Granos, violates the U.S. Constitution's Due Process Clauses, the Takings Clause and the Contracts Clause.  *See* U.S. Const. amend. V; XIV; art. I, § 10.

2.       The Granos further seek a permanent injunction pursuant to 28 U.S.C. § 2202 preventing the Commonwealth or the Governor from applying or enforcing the statute against the Granos.

3.       Plaintiffs request a speedy hearing of this declaratory-judgment action pursuant to Fed. R. Civ. P. 57 ("The court may order a speedy hearing of a declaratory-judgment action.").

4.       This suit draws into question the constitutionality of a state statute, Virginia Code § 55.1-306.1.  The Commonwealth of Virginia was served notice, pursuant to Fed. R. Civ. P. 5.1 (*See* Notice (ECF No. 2)) and intervened as a party, pursuant to Rule 5.1 to "defend the constitutionality of Virginia Code § 55.1-306.1."  *See* Notice of Intent to Intervene (ECF No. 10).

5.       This Court has original jurisdiction over this matter to grant the relief requested pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. §§ 2201, 2202.

6.       An actual controversy exists between the parties.  28 U.S.C. § 2201.

7.     The Court has already determined that it has jurisdiction in this matter. *See* Mem. Op. (ECF No. 47) at 11.

8.     The Court has already determined that the Granos have suffered an actual injury. *See* Mem. Op. (ECF No. 47), at 8.

9.     The Court has already determined that the issues are ripe for adjudication. *Id.* at 7-8.

## PERSONAL JURISDICTION OVER DEFENDANTS

10.     The Defendant, REC, is subject to the jurisdiction of this Court because, *inter alia*, it acted, may act, and has received new easement rights under color of Virginia law and within the geographic confines of the Commonwealth of Virginia and the Western District of Virginia.

11.     The Defendant, the Commonwealth of Virginia, is subject to the jurisdiction of this Court because, *inter alia*, this Court is situated within the Commonwealth of Virginia; because the Statute in question is applicable within the confines of the Commonwealth of Virginia and the Western District of Virginia; and because the Commonwealth has voluntarily intervened and appeared in this matter and brought itself under the jurisdiction of this Court. [2]

12.     The Defendant, Governor Ralph Northam, is subject to the jurisdiction of this Court because, *inter alia*, he has acted under the color of Virginia law and within the geographic confines of the Commonwealth of Virginia and his actions have taken effect within the confines of the Western District of Virginia. Governor Northam resides in the Commonwealth of Virginia.

---

[2] Plaintiffs believe that the Commonwealth is appropriately before the Court based upon its Notice of Intent to Intervene and its voluntary appearances in this matter. To avoid any ambiguity as to the Commonwealth's status as a party and its duty to respond to the Amended Complaint, Plaintiffs are serving the Amended Complaint on the Commonwealth in accordance with Fed. R. Civ. P. 4.

13.     Under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), State officials may be sued for declaratory and injunctive relief when they act in violation of the Constitution.  This Court has jurisdiction to grant the requested relief against an unconstitutional Statute enacted by the Virginia General Assembly, and signed into law and enforced by the Governor of Virginia. *See Hutto v. South Carolina Retirement System*, 773 F.3d 536 (4th Cir. 2014).

## VENUE

14.     This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. § 1391.  The actions complained of in this Complaint took place or will take place within Culpeper County, Virginia, and the relief sought is to take effect there.  Venue is therefore proper in this Court.

## PARTIES

### PLAINTIFFS JOHN R. GRANO, JR. AND CYNTHIA TAFT GRANO

15.     John R. Grano, Jr. and Cynthia Taft Grano are the owners of the property at 25535 Somerville Road, Mitchells, Virginia 22729 in Culpeper County, Virginia, having acquired the property in 1990 from Robert F. Taft.

16.     The Granos have standing to challenge the actions taken by the Commonwealth and Governor.  The Granos have been injured-in-fact by the Defendants' actions and are subject to immediate and substantial risk of prospective harm.  *Duke Power Co. v. Carolina Env. Study Group, Inc.*, 438 U.S. 59, 71 n.15 (1979) (Declaratory Judgment Act "allows individuals threatened with a taking to seek a declaration of the constitutionality of the disputed governmental action before potentially uncompensable damages are sustained"); *Beck v. McDonald*, 848 F.3d 262, 275 (4th Cir. 2017) ("we may also find standing based on a 'substantial risk' that the harm will occur.").

17.     The Statute, by its very enactment, has already unconstitutionally rewritten the Granos' 1989 Electric Distribution Easement with REC, resulting in the divestment of the Granos' property rights, including the right to exclude, without due process or condemnation, resulting in injury-in-fact to the Granos.  *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982) ("The power to exclude has traditionally been considered one of the most treasured strands in an owner's bundle of property rights.").

18.     Further REC purportedly believes it may exercise those rights at its discretion by physically invading the Granos' property to install and maintain broadband or communications systems not permitted under the Easement, as it has previously done, representing more than a substantial risk that further harm will occur.

## DEFENDANT - RAPPAHANNOCK ELECTRIC COOPERATIVE

19.     Rappahannock Electric Cooperative is a private nonstock corporation, and utility consumer services cooperative, organized under the laws of the state of Virginia and a "person" within the meaning of 42 U.S.C. § 1983.

20.      REC has been delegated a limited power of eminent domain for the sole purpose of condemning property for the transmission and distribution of "energy" as a "utility consumer services cooperative."  *See* Virginia Code §§ 56-231.15, 56-231.23, 56-231.43.

21.     Upon information and belief, at all times relevant hereto, Defendant REC has acted and is not prevented from acting, under color of state law.

22.     This Court has previously affirmed its jurisdiction to adjudicate the Granos' alleged Contracts Clause violation against REC.  *See* Mem. Op. (ECF No. 47) at 14.

## DEFENDANT – COMMONWEALTH OF VIRGINIA

23.     The Commonwealth of Virginia has intervened voluntarily and appeared in this matter pursuant to Fed. R. Civ. P. 5.1 and 28 U.S.C. § 2403(b) to "defend the constitutionality" of the Statute in question.

## DEFENDANT – GOVERNOR RALPH S. NORTHAM

24.     Governor Ralph S. Northam is the Governor of the Commonwealth of Virginia; and pursuant to Va. Const. Art. V, Sec. 6 is empowered to approve and to sign any bills which have passed the Virginia Senate and Virginia House of Delegates before they become law.

25.     Pursuant to Va. Const. Art. V, Sec. 6, when the Governor approves and signs the bill, it "shall become law."

26.     Pursuant to Va. Const. Art. V, Sec. 7, Governor Northam, as Governor of the Commonwealth of Virginia "shall take care that the laws be faithfully executed," and is constitutionally charged with enforcing the laws of the Commonwealth.

27.     On April 10, 2020, Governor Northam approved SB 794 and HB 831 and signed them into law, which law came into effect on July 1, 2020 as Va. Code § 55.1-306.1.

28.     The Governor is the constitutional officer charged with enforcement of the Statute. Va. Const. Art. V, Sec. 7.

## FACTS

### BACKED BY CENTURIES OF VIRGINIA PROPERTY LAW, THE 1989 ELECTRIC DISTRIBUTION EASEMENT LIMITED REC'S USE OF THE GRANOS' PROPERTY STRICTLY TO THE GRANTED USE

29.     In 1989, the Granos' predecessor in interest granted REC an express easement on the Granos' Property allowing REC to "operate and maintain an electric distribution system."  A copy of the 1989 Electric Distribution Easement is attached hereto as Exhibit 2.

30.     The 1989 Electric Distribution Easement grants REC an electric distribution easement with right of apportionment.  *See* Exhibit 2.

31.     "An easement is a privilege held by one landowner to use and enjoy certain property of another in a particular manner and for a particular purpose. . . . In resolving a dispute between landowners regarding the terms of an easement that is granted or reserved expressly by deed, we apply the customary rules governing the construction of written documents.  Thus, we ascertain the rights of the parties from the words set forth in their deeds."  *Anderson v. Delore*, 278 Va. 251, 256–57, 683 S.E.2d 307, 309–10 (2009) (internal citations omitted).

32.     The Virginia Supreme Court has recognized that "for over a century," Virginia property law—consistent with centuries of common law of the United States and England—has affirmed that a grant of easement or any "covenants restricting the free use of land" are to be strictly construed.  *Wetlands Am. Tr., Inc. v. White Cloud Nine Ventures, L.P.*, 291 Va. 153, 163, 782 S.E.2d 131, 137 (2016).

33.     The 1989 Electric Distribution Easement is an express limited easement defined by the four corners of the easement document.

34.     The 1989 Electric Distribution Easement specifically defines and limits the rights conveyed to REC by the Granos' predecessor in interest.

35.     The 1989 Electric Distribution Easement provides:

[G]rantor grants and conveys unto grantee, its successors and assigns, the perpetual right, privilege and easement of right of way over, under, upon and across the land grantor as shown and designated on the attached Schedules "A" and "B" consisting of a drawing dated September 15, 1989, hereto attached and made part of this Agreement, to construct, operate and maintain an electric distribution system including all appurtenances and attachments desirable in connection therewith. The facilities constructed hereunder shall remain the property of the grantee.

> The facilities to be constructed will be overhead and underground and consist of the installation of primary and service conductors, poles, guy supports, pad mount transformers, sectionalizing cabinet, conduit and appurtenances on the lands of granted as shown on the aforementioned drawing. Right of way widths shall be forty (40) feet for overhead and fifteen (15) feet for underground.

(emphasis added).

36.    "[E]asements grant only nonpossessory rights of use limited to the purposes specified in the easement agreement". *United States Forest Serv. v. Cowpasture River Pres. Ass'n*, 140 S. Ct. 1837 (2020).

37.    The rights conveyed to REC through the 1989 Electric Distribution Easement are strictly limited to the uses granted in the easement. *See Stephen Putney Shoe Co. v. Richmond, F. & P.R. Co.*, 116 Va. 211, 217, 81 S.E. 93, 96 (1914).

38.    The 1989 Electric Distribution Easement did not covey to REC the right to use the Granos' Property for laying or maintaining fiber optic cable or any other broadband or communications instrumentalities other than those which are "appurtenan[t] and attach[ed]" to an "electric distribution system." *See* Exhibit 2.

39.    "[N]o use may be made of the easement, different from that established when the easement was created, which imposes an additional burden on the servient estate." *Shooting Point, L.L.C. v. Wescoat*, 265 Va. 256, 266, 576 S.E.2d 497, 503 (2003); s*ee also Collins v. Fuller*, 251 Va. 70, 72, 466 S.E.2d 98, 99 (1996); *Hayes v. Aquia Marina, Inc.*, 243 Va. 255, 258, 414 S.E.2d 820, 822 (1992); *Cushman Virginia Corp. v. Barnes*, 204 Va. 245, 253, 129 S.E.2d 633, 639–40 (1963) (citing *First Nat. Tr. & Sav. Bank v. Raphael*, 201 Va. 718, 723, 113 S.E.2d 683, 687 (1960); *Wagoner v. Jack's Creek Coal Corp.*, 199 Va. 741, 744, 101 S.E.2d 627, 629 (1958); *Vance v. Davis*, 195 Va. 730, 737, 80 S.E.2d 396, 400 (1954); Ribble, 1 *Minor*

*on Real Property* § 107, at 146 n. 2 (2d ed. 1928); 17A Am. Jur., *Easements*, § 119 at 727

(2016); Anno. 130 A.L.R. 768 (1941)).

40.     Broadband and communications provision and expansion are not the operation

and maintenance of an electric distribution system. *See*, *e.g.*, *City of Orlando v. MSD-Mattie,*

*L.L.C.*, 895 So. 2d 1127, 1129-30 (Fla. Dist. Ct. App. 2005) ("[A] fiber optic cable is not an

'electric transmission line.' . . . the scope of an easement is defined by what is granted, not by

what is excluded, and all rights not granted are retained by the grantor.") (internal citations

omitted).[3]

41.     "[If] the conveyance limits exclusive use of all or part of the servient estate *to a*

*particular purpose* . . . the servient landowner retains the right to use the land in ways not

inconsistent with the uses granted in the easement." *Walton v. Capital Land, Inc.*, 252 Va. 324,

326–27, 477 S.E.2d 499, 501 (1996) (emphasis in original) (internal citations omitted).

42.     The Granos substantially and materially relied on the express terms of the 1989

Electric Distribution Easement and above-referenced Virginia law when they purchased the

Property in 1990 from Robert F. Taft.

43.     The Granos' property rights, apart from those explicitly granted under the 1989

Electric Distribution Easement, are vested under Virginia law.

44.     Easements are contracts under Virginia law.  *See, e.g.*, *William S. Stokes, Jr., Inc.*

*v. Matney*, 194 Va. 339, 343, 73 S.E.2d 269, 271 (1952).

---

[3] Whereas electrical power traditional telephone lines involve the transmission of electrical current or signals over a conductive medium (like copper wire), Fiber-optic systems transmit information using "pulses of light" through "strands of fiber" (glass or plastic).  Fiber optic systems do not relay "energy" in any meaningful sense, other than as an incidental byproduct of their primary goal of relaying digital data.  *See Fiber Optics Definition*, Verizon, Inc. https://www.verizon.com/info/definitions/fiber-optics/.

45.     Courts will not rewrite contracts; parties to a contract will be held to the terms upon which they agreed.  *Bank of Southside Virginia v. Candelario*, 238 Va. 635, 640, 385 S.E.2d 601, 603 (1989).

**BY ENACTING VIRGINIA CODE § 55.1-306.1, THE COMMONWEALTH AND THE GOVERNOR MATERIALLY ALTERED ESTABLISHED PROPERTY LAW AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THE 1989 ELECTRIC DISTRIBUTION EASEMENT**

46.     During its 2020 session, the Virginia General Assembly passed and the Governor signed into law Virginia Code § 55.1-306.1, which took effect on July 1, 2020.  The text of the statute is attached hereto as Exhibit 3.

47.     The law, in the form of SB 794 and HB 831, were signed by the Speaker of the House of Delegates and President Pro Tempore in March 2020; and were approved and signed as law by Governor Northam on April 10, 2020.

48.     Thus, the Commonwealth, by and through the General Assembly, and Governor Northam have taken affirmative steps in enacting the Statute as law with the effect of depriving the Granos of their private property rights.

49.     Virginia Code § 55.1-306.1(B)(1) states that "[i]t is the policy of the Commonwealth that: . . . Easements for the location and use of electric and communications facilities may be used to provide or expand broadband or other communications services[.]"

50.     Virginia Code § 55.1-306.1 defines "easement" as "an existing or future occupied electric distribution or communications easement with right of apportionment."  *See* Va. Code § 55.1-306.1.

51.     Virginia Code § 55.1-306.1(B)(2) declares that the "use of easements . . . to provide or expand broadband or other communications services is in the public interest."

52.     Virginia Code § 55.1-306.1 does not require the owner of the dominant interest (here, REC) to purchase, to institute eminent domain proceedings or to otherwise take affirmative steps to acquire fiber optic rights from the Granos, or provide them payment for this new use of their property.

53.     Virginia Code § 55.1-306.1(B)(3) declares that the "installation, replacement, or use of public utility conduit, including the costs of installation, replacement, or use of conduit of a sufficient size to accommodate the installation of infrastructure to provide or expand broadband or other communications services, is in the public interest."

54.     Virginia Code § 55.1-306.1(B)(6), however, also states that "[n]othing in this section shall be deemed to make the use of an easement for broadband or other communications services, whether appurtenant, in gross, common, exclusive, or nonexclusive, a public use for the purposes of § 1-219.1 (which statute specifically limits the power of eminent domain), or other applicable law."

55.     Virginia Code § 55.1-306.1(D) declares that "the installation and operation of broadband or other communications services within any easement shall be deemed, as a matter of law, to be a permitted use within the scope of every easement."

56.     Virginia Code § 55.1-306.1 allows any existing electrical or communications easement, including the 1989 Electric Distribution Easement, to be used to install fiber optic cable and states as a matter of law that:

> The use of easements, appurtenant or gross, to provide or expand broadband or other communications services (i) does not constitute a change in the physical use of the easement, (ii) does not interfere with, impair, or take any vested or other rights of the owner or occupant of the servient estate, (iii) does not place any additional burden on the servient estate other than a de minimis burden, if any; (iv) has value to the owner or occupant of the servient estate greater than any de minimis impact.

Va. Code § 55.1-306.1(B)(4).

14

57.     Virginia Code § 55.1-306.1(B)(5) declares that "installation and operation of broadband or other communications services within easements, appurtenant or gross, are merely changes in the manner, purpose, or degree of the granted use as appropriate to accommodate a new technology."

58.     Despite existing Virginia case law to the contrary, Virginia Code § 55.1-306.1(D) states that "[a]bsent any express prohibition on the installation and operation of broadband or other communications services in an easement that is contained in a deed or other instrument by which the easement was granted, the installation and operation of broadband or other communications services within any easement shall be deemed, as a matter of law, to be a permitted use within the scope of every easement for the location and use of electric and communications facilities."

59.     Virginia Code § 55.1-306.1(E) states that "[s]ubject to compliance with any express prohibitions in a written easement, any incumbent utility or communications provider may use an easement to install, construct, provide, maintain, modify, lease, operate, repair, replace, or remove its communications equipment, system, or facilities, and provide communications services through the same, without such incumbent utility or communications provider paying additional compensation to the owner or occupant of the servient estate or to the incumbent utility, provided that no additional utility poles are installed."

60.     Virginia Code § 55.1-306.1(E) states that "any incumbent utility or communications provider may use an easement to install, construct, provide, maintain, modify, lease, operate, repair, replace, or remove its communications equipment, system, or facilities, and provide communications services through the same, without . . . paying additional compensation to the owner or occupant of the servient estate." (emphasis added).

61.    Virginia Code § 55.1-306.1(I) permits recovery by a landowner solely through the mechanism of "trespass, or any claim sounding in trespass" for "actual damages," but not just compensation for rights taken, presumably because Virginia Code § 55.1-306.1(B)(4)(ii) declares as a matter of law that no rights are taken.  Section I further states that "[d]amages shall be based on any reduction in the value of the land" despite the fact that Virginia Code § 55.1-306.1(B)(4)(iii-iv) declares as a matter of law that such easements have only a "de minimis" impact, and do not negatively impact value.[4]

62.    Virginia Code § 55.1-306.1(I), together with Virginia Code § 55.1-306.1(B)(4) provide a singular, constrained and illusory remedy for relief while simultaneously preventing recovery under that approved remedy.

63.    Virginia Code § 55.1-306.1(I) forbids landowners from seeking injunctive relief.

64.    Virginia Code §§ 55.1-306.1(R-T) limits a property owner's opportunity for redress even further, with strict statutes of limitation and notice requirements, even for the constrained and illusory causes of action acknowledged in Virginia Code § 55.1-306.1(I).

65.    Virginia Code § 55.1-306.1 rewrites all existing electric distribution or communication easement contracts across Virginia to add additional rights not bargained for to the dominant estate and seizing them from the servient estate, unless the existing easement specifically forbids such a use or already permitted such a use.  This is facially unconstitutional.

---

[4] For well over 100 years, the Supreme Court has recognized that it is illegitimate for a legislature to make such determinations, because the amount of just compensation is a judicial question.  *See Monongahela Nav. Co. v. United States*, 148 U.S. 312, 327 (1893) ("The legislature may determine what private property is needed for public purposes; that is a question of a political and legislative character. But when the taking has been ordered, then the question of compensation is judicial. It does not rest with the public, taking the property, through congress or the legislature, its representative, to say what compensation shall be paid, or even what shall be the rule of compensation. The constitution has declared that just compensation shall be paid, and the ascertainment of that is a judicial inquiry.").

66.     On properties where easements specifically allow or disallow the right to place and operate fiber optic lines, Virginia Code § 55.1-306.1 has no effect.

67.     As applied to the Plaintiffs, Virginia Code § 55.1-306.1 adds new and additional terms to the 1989 Electric Distribution Easement by assigning REC new rights and taking those same rights away from the Granos.

68.     Virginia Code § 55.1-306.1, as applied to the Plaintiffs, further burdens the easement area defined in the 1989 Electric Distribution Easement and the entire servient estate.

69.     Virginia Code § 55.1-306.1 grants REC a right to use the 1989 Electric Distribution Easement for a different use from that defined in the 1989 Electric Distribution Easement, which imposes an additional burden on the servient estate, the Granos' property.  *See* Va. Code § 55.1-306.1(D) ("[T]he installation and operation of broadband or other communications services within any easement shall be deemed, as a matter of law, to be a permitted use within the scope of every easement").

70.     "[A] cable can rightfully occupy the easement to serve the purpose authorized in the easement. But that cable cannot also serve the general public for purposes not authorized by the easement. That additional use—here, [Electric Company's] use for public-serving commercial telecommunications unrelated to electric transmission—is an expanded use . . ." *Barfield v. Sho-Me Power Elec. Coop*., 852 F.3d 795, 802 (8th Cir. 2017).

71.     Use for provision and expansion of broadband and communications services is not reasonably necessary for operation and maintenance of an electric distribution system.  *See, e.g.*, *CenterPoint Energy Houston Elec. LLC v. Bluebonnet Drive, Ltd*., 264 S.W.3d 381, 389 (Tex. App. 2008) ("No rights pass to the easement holder by implication except those that are 'reasonably necessary' to enjoy the rights that the easement grants expressly.  Accordingly, if the

grant expressed in the easement cannot be construed to apply to a particular purpose, a use for that purpose is not allowed.") (internal citations omitted).

72.     Virginia Code § 55.1-306.1 thus confiscates, without compensation, private property rights to exclude unpermitted users and uses, the right of landowners to sell the right to install and operate fiber optic cable and other uses of their land that are not for "electric power" easements.  The Statute takes from the Granos, rights that had been reserved unto them upon the creation of the 1989 Easement, while simultaneously declaring, as a matter of law, that the additional use "does not . . . take any vested or other rights" and regardless "has value . . . greater than any de minimis impact."  Va. Code § 55.1-306.1(B)(4).  Virginia Code § 55.1-306.1 serves as an end-run around the constitutional mandate for just compensation and centuries of standing property law.  This is what has occurred as between the Granos and REC.

73.     Virginia Code § 55.1-306.1 also impairs and rewrites the terms of easements, including the 1989 Electric Distribution Easement, by allowing the dominant estate holders (REC) to use the easement and the servient estate (the Granos' property) for a use different from that established by the bargained-for easement (the 1989 Electric Distribution Easement), which imposes an additional burden on the servient estate.

## REC: WE CAN "EASILY JUST WAIT UNTIL JULY 1 TO PROCEED" – THE ATTEMPTED 2020 FIBER OPTIC EASEMENT

74.     On December 18, 2019, REC and Orange County, Virginia announced a partnership to construct and lease fiber optic cable.  The announcement included "800 miles of planned [fiber optic] construction."  A press release with the announcement is attached hereto as Exhibit 4 ("2019 Press Release").  A further Broadband Position Statement (last updated on June 17, 2020) is also included in Exhibit 4 at page 2.

75.     Before July 1, 2020, REC approached the Granos seeking to replace or rewrite the 1989 Electric Distribution Easement with a new easement that would expand REC's rights to include "the purpose of installing constructing, operating and maintaining fiber optic conduit and cables and/or related telecommunication materials and lines."  The proposed fiber-optic easement is attached as Exhibit 5 ("Attempted 2020 Fiber Optic Easement").

76.     The Attempted 2020 Fiber Optic Easement would have superseded the 1989 Electric Distribution Easement with an "[e]asement[] for the location and use of electric . . . facilities . . .  to provide broadband or other communications services."  Va. Code § 55.1-306.1(B)(1); *see* Exhibit 5 at 1.

77.     REC did not attempt to exercise eminent domain, and the Granos were under no obligation to accept REC's offer to purchase a new easement with an expanded or different scope of use, or to accept its offer of payment.

78.     After negotiating with REC as to language and the value of the additional rights REC sought in the Attempted 2020 Fiber Optic Easement, the Granos ultimately refused REC's offer, and did not convey any additional rights to REC.

79.     In April, 2020 REC informed the Granos of the newly-signed Virginia Code § 55.1-306.1, and indicated the offer of compensation for the Attempted 2020 Fiber Optic Easement was merely a "good faith gesture" and that REC could "easily just wait until July 1 to proceed" without reaching a deal or paying compensation for the very rights it was then seeking to acquire through negotiation.

80.     REC further informed the Granos that when the Statute became effective on July 1, 2020, the "clear language of the statute" "allows [REC] to incorporate telecommunications or

broadband facilities into their current electric utilities all within the easement that currently encumbers [the Granos'] property," and to do so without paying the Granos.

81.     In anticipation of exercising these purported rights REC installed fiber optic equipment and facilities on properties adjoining the Granos' property.

82.     Upon information and belief, in anticipation of exercising these purported rights, REC installed and buried conduit to be used for fiber-optic cable on the Granos' Property.  To the best knowledge of the Plaintiffs this conduit, installed pursuant to the rights purportedly conveyed to REC by the statute, remains on the property in violation of REC's existing easement.

83.     In anticipation of exercising these purported rights, REC further affixed appurtenances to allow it to run fiber optic cables on some poles within its easement on the Granos' property.  *See* Exhibit 1 (showing REC owned poles on the Granos' property in the REC easement affixed with yellow "wheels" and a green "pull cord spool" used for stringing fiber optic lines).  These appurtenances have since been removed, but REC has not relinquished any of its purported rights to replace them.

84.     REC imminently intends to and may already have begun installing or allowing others to install fiber optic cable within its easement corridor in Culpeper County and Orange County.  Based on the above, and on information and belief, as of July 1, 2020, REC purportedly possesses, and demonstrably believes it possesses on the Granos' property, by virtue of Virginia Code § 55.1-306.1, the right to lay, operate, and maintain broadband and communications systems, including fiber-optic cable among other things not granted in the 1989 Electric Distribution Easement.

85.     At no point before the enactment of the Statute did REC purchase, condemn or otherwise acquire from the Granos any of the new property rights it now seeks to use, nor has REC paid just compensation.

86.     At no point have the Granos conveyed or agreed to convey to REC any rights beyond those contained in the 1989 Electric Distribution Easement.

87.     In the absence of the 1989 Electric Distribution Easement, REC would have no right or ability to enter, use, or otherwise trespass on the Granos' property.  The 1989 Electric Distribution Easement remains the sole document defining REC's rights on the Granos' property and governing the easement relationship between REC and the Granos.

88.     As of July 1, 2020, the Granos have lost the right to exclude others from placing fiber optic lines, broadband or communications systems on their property.

89.     As of July 1, 2020 the Granos have lost the exclusive right to place fiber optic lines, broadband or communications systems on their own property in REC's easement, or assign the right to others.

90.     As of July 1, 2020 the title to the Granos property has been encumbered by new easement rights without their consent and without any process sanctioned by the U.S. Constitution.

91.     REC has admitted the Statute gave it new rights.  *See* ¶¶ 79 – 84, *infra*.  *See also* Declaration of John M. Arp (ECF No. 13-1) at ¶ 8.

### FACTS SUPPORTING DECLARATORY RELIEF

92.     There exists an actual, present, and justiciable controversy between the Granos and the Defendants concerning the constitutionality of Virginia Code § 55.1-306.1 both on its face and as applied to the Granos.

93.     A declaration from this Court would settle the issue.

94.     A declaration would also serve a useful purpose in clarifying the legal issues in dispute.

95.     This Court has previously found that this controversy is ripe for judicial determination. *See* Mem. Op. (ECF No. 47) at 6-8.

96.     Declaratory relief is necessary and appropriate so that the parties may know the legal rights and obligations that govern their present and future conduct regarding the Granos' property and the 1989 Electric Distribution Easement.

97.     Declaratory relief is necessary and appropriate so that the Granos' property rights are protected and so that REC and all others act in conformity with the 1989 Electric Distribution Easement and the U.S. Constitution, specifically the Fifth and Fourteenth Amendments, and so that no third parties may enter upon the Granos' property and cause any further damage.

98.     The need is immediate as REC now allegedly possesses, has used, and has declared that it possesses the rights which Virginia Code § 55.1-306.1 unconstitutionally purported to convey to REC on July 1, 2020.

99.     The need is immediate as third party "communications providers" may seek to act under color of the Statute here challenged.

100.    Accordingly, there is a substantial risk of harm to the Granos property interests absent declaratory relief. *See Beck v. McDonald*, 848 F.3d 262, 275 (4th Cir. 2017); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 432–33, 133 S. Ct. 1138, 1160–61, 185 L. Ed. 2d 264 (2013).

101.    A declaratory statement from the Court will prevent imminent future disputes between the parties, and harm to the Granos, as well as numerous other property owners impacted by the unconstitutional Statute.

102.    A declaratory statement from the Court will prevent additional liability for "incumbent easement holders" and "communications providers" by causing them to cease their reliance on the Statute.

## FACTS SUPPORTING PERMANENT INJUNCTIVE RELIEF

103.    The Granos have suffered an irreparable injury by the loss of their rights under the Statute.  REC, under the color of state law, and without bargaining through contract is in possession of them, as are additional third party "communications providers" who the Statute authorizes to access and use the Granos property.

104.    There is no adequate remedy at law, because the statute specifically prevents claims for just compensation through inverse condemnation (which do not "sound in trespass" in Virginia), providing instead a remedy which is, by design, futile and illusory.  *See* Va. Code § 55.1-306.1(I).  The Statute also purports to forbid injunctive relief.  *See Id*.

105.    The balance of equities is in favor of the Granos because granting an injunction results in REC only losing rights and advantages gained by unconstitutional means and which rights and advantages they have represented to this Court they have no intention to use.  *See* Declaration of John M. Arp (ECF No. 13-1) at ¶ 19; Brief in Support of Motion to Dismiss (ECF No. 13) at 2, 5, 11.

106.    Granting an injunction gives the Granos no additional rights beyond those they already lawfully possess.

107.    Moreover, the Commonwealth of Virginia and the Governor stand to lose no rights or advantages by the granting of the injunction and, in fact, may be spared additional liability through the granting of an injunction.

108.    A preliminary injunction is in the public interest as numerous other incumbent easement holders and "communications providers" may attempt to take unconstitutional action against other landowners under Virginia Code § 55.1-306.1.

109.    An injunction serves as notice to other similarly situated parties that, both on its face and as applied, Virginia Code § 55.1-306.1, is an unconstitutional justification for depriving owners of their underlying property or rights and would prevent further constitutional violations from occurring under color of the Statute.

### CLAIMS FOR RELIEF

### AMENDED COUNT 1: DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS OF LAW (SUBSTANTIVE DUE PROCESS), 42 U.S.C. § 1983 (DECLARATORY AND INJUNCTIVE RELIEF – DEFENDANT NORTHAM)

110.    The Granos incorporate the foregoing allegations as if re-alleged herein.

111.    The Granos possess property and private property within the meaning of the terms in the Due Process Clauses of both the Fifth and Fourteenth Amendments to the United States Constitution.

112.    Easements are specific grants for specific purposes and are narrowly construed, with all additional rights retained to the owner of the underlying land.  *See United States Forest Serv. v. Cowpasture River Pres. Ass'n*, No. 18-1584, 2020 WL 3146692, at *5 (U.S. June 15, 2020) ("[E]asements grant only nonpossessory rights of use limited to the purposes specified in the easement agreement.").

24

113.    The specific purpose of, and thus the only rights conveyed by, the 1989 Electric Distribution Easement was to install, operate and maintain an electric distribution system in accordance with the 1989 Electric Distribution Easement's express terms.  *See* Exhibit 2.

114.    The Granos retained the property right to prevent REC and others from using the 1989 Electric Distribution Easement for any purposes other than those specifically granted in the 1989 Electric Distribution Easement.

115.    The Granos retained the property right to exclude REC and others from the 1989 Electric Distribution Easement for purposes other than those specifically granted in the easement.

116.    The Granos retained the property right to use the 1989 Electric Distribution Easement area in any way that does not interfere with REC's specifically granted rights in the 1989 Electric Distribution Easement.

117.    The Governor approved and signed into law the Statute which took the Granos' property, in contravention of the Fifth and Fourteenth Amendments.

118.    The Granos never granted REC or any others a right to install fiber optic lines or any other uses but electric distribution in the 1989 Electric Distribution Easement, and REC has never acquired such rights.

119.    In the absence of the enactment of Virginia Code § 55.1-306.1, REC would have no basis to enter or use the Granos' property in any way inconsistent with strict terms of use in the 1989 Electric Distribution Easement.

120.    The Granos never granted REC a right to allow others to install fiber optic lines in the 1989 Electric Distribution Easement and REC did not possess such rights prior to the effective date of the Statute.

121.    On July 1, 2020, as a result of the Governor's official approval and signature, Virginia Code § 55.1-306.1 became effective and acquired from the Granos the right to permit REC or others to lay fiber-optic cable on the property, and deprived the Granos of constitutionally-protected property interests, without a reasonable basis, without due process, and without condemnation and payment of just compensation.

122.    REC has previously admitted that it now possesses and is free to exercise the rights unconstitutionally conveyed to it by Virginia Code § 55.1-306.1 without the Granos receiving due process of law, and has acted on that intent.  *See* ¶¶ 79-84, *supra*.

123.    The Governor's actions under color of Virginia Code § 55.1-306.1 are arbitrary and capricious and go beyond a legitimate interest; and no procedures could cure the deficiency.

124.    The arbitrary and capricious divestment by the Governor under color of Virginia Code § 55.1-306.1 of the Granos long-held property rights while denying them the opportunity for the protections of eminent domain procedures (including notice, a meaningful opportunity to be heard (including a jury determination of just compensation) by law is, by design, not able to be addressed by any normal post-deprivation remedy (*e.g.*, quiet title, inverse condemnation, for example).

125.    Virginia Code § 55.1-306.1 declares as a matter of law that the rights taken do not have any substantive value themselves nor an effect on the value of the remaining property and redefines the rights taken in previous easements on an *ad hoc* basis.  No inverse condemnation, for example, can be brought as Virginia Code § 55.1-306.1(B)(4) explicitly says as a matter of law that the additional rights have *de minimi*s impact and are of no value.  No trespass or quiet title claims can be made as Virginia Code § 55.1-306.1 gives legal sanction to the unconstitutional seizure of the Granos' property rights.

126.     Virginia Code § 55.1-306.1 arbitrarily, capriciously, and irrationally divests a court from its constitutionally-mandated role in determining just compensation.  *See Monongahela Nav. Co. v. United States*, 148 U.S. 312, 327 (1893) ("The legislature may determine what private property is needed for public purposes; that is a question of a political and legislative character.  But when the taking has been ordered, then the question of compensation is judicial.  It does not rest with the public, taking the property, through congress or the legislature, its representative, to say what compensation shall be paid, or even what shall be the rule of compensation.  The constitution has declared that just compensation shall be paid, and the ascertainment of that is a judicial inquiry.").

127.     The sole manner of redress in Virginia Code § 55.1-306.1(I) is restricted and illusory, as its outcome is determined by legal declarations in Virginia Code § 55.1-306.1(B).

128.     Regardless of Virginia Code § 55.1-306.1(I) allowing for actions that are in trespass or "sound[] in trespass," the statute makes no allowance for constitutionally mandated just compensation for the taking and or damaging of the Granos' property.

129.     There is no available constitutional process for Virginia Code § 55.1-306.1's arbitrary and capricious divestment and conveyance to REC of the Granos' property rights.

130.     The Governor approved SB794 and HB831.

131.     The Governor signed SB794 and HB831.

132.     When the Governor approved and signed the bills, Virginia Code § 55.1-306.1 became law and went into effect on July 1, 2020.

133.     The Governor is a state actor under 42 U.S.C. § 1983.

134.     The Governor has deprived the Granos of their constitutionally protected property rights under the color of state law.

135.     The Granos are requesting a declaratory judgment that, by signing the bills giving

rise to the Statute the Governor has unconstitutionally deprived them of property without due

process of law, and the Statute is unconstitutional both on its face, and as applied.  The Granos

are also seeking a permanent injunction prohibiting the Governor from enforcing the Statute or

otherwise infringing on the Granos' property rights as described herein.

## AMENDED COUNT 2: DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS OF LAW (PROCEDURAL DUE PROCESS), 42 U.S.C. § 1983 (DECLARATORY AND INJUNCTIVE RELIEF – DEFENDANT NORTHAM)

136.     The Granos incorporate the foregoing allegations as if re-alleged herein.

137.     The Granos possess property and private property within the meaning of the

terms in the Due Process Clauses of both the Fifth and Fourteenth Amendments to the United

States Constitution.

138.     Both on its face and as applied, the signing into law and enactment of Virginia

Code § 55.1-306.1 by the Governor has deprived the Granos of their property rights without

notice, a hearing, or an appeal.  By signing the bill into law the Governor divested the Granos

long-held property rights while denying them the opportunity for the protections of eminent

domain procedures (including notice, a meaningful opportunity to be heard, or including a jury

determination of just compensation).

139.     The procedures employed in the Statute were constitutionally inadequate.  The

Fifth Amendment (incorporated to the states under the Fourteenth Amendment) to the U.S.

Constitution guarantees that "private property" shall not "be taken for public use, without just

compensation."  Under color of Virginia Code § 55.1-306, the Governor, by signing the Statute

into law, has taken the Granos' property, and the Granos are under the threat of having their

property taken, because Virginia Code § 55.1-306.1 purports to add terms to an existing

easement, without notice or hearing, and provides no avenue for the constitutionally-required just compensation and damages before the taking.  *See* Virginia Code §§ 55.1-306.1(B)(4), (6).

140.    The only "process" provided for in Virginia Code § 55.1-306.1, was instantaneous, unappealable seizure, without any opportunity for condemnation by eminent domain and the payment of just compensation upon its effective date of July 1, 2020, which contravenes the Fifth Amendment.

141.    Virginia Code § 55.1-306.1 does not provide the Granos or any other landowner with a reasonable, certain, and adequate process to be divested of their property in accordance with the Constitution, eminent domain laws, or to obtain compensation.

142.    The Granos seek a declaratory judgment from this Court stating that Virginia Code §§ 55.1-306.1 is unconstitutional as enacted both on its face and as applied against the Granos as it violates the Fifth and Fourteenth Amendments.

143.    Plaintiffs are entitled to a declaratory judgment that, because Virginia Code § 55.1-306.1 does not provide advance assurance of adequate compensation in the event of a taking, the Governor, as Chief Executive of the Commonwealth of Virginia, has violated the Fifth Amendment as applied to the states and others who act under the authority of state law and exercise governmental powers.  The Declaratory Judgment Act "allows individuals threatened with a taking to seek a declaration of the constitutionality of the disputed governmental action before potentially uncompensable damages are sustained." *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 71, n. 15 (1978); *See E. Enterprises v. Apfel*, 524 U.S. 498, 521 (1998).

144.    Plaintiffs are also entitled to a permanent injunction prohibiting the Governor from undertaking or allowing any action under the color of Virginia Code § 55.1-306.1 against

the Granos' and their property, unless the rights are acquired through purchase or eminent

domain proceedings are instituted to condemn the property, and reasonable, certain, and

adequate assurances are made for providing just compensation and damages.

### COUNT 3: CONTRACTS CLAUSE - REC
### (42 U.S.C. § 1983, OR ALTERNATIVELY U.S. CONST. ART. I, § 10)
### (DECLARATORY AND INJUNCTIVE RELIEF)

145.    The Granos incorporate the foregoing allegations as if re-alleged herein.

146.    The 1989 Electric Distribution Easement is a contract which sets out the rights

and obligations of the Granos and REC.

147.    The Granos' contractual rights are vested rights under Virginia law.

148.    The Contracts Clause, Article I, Section 10 of the United States Constitution

provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts."

149.    As described above, Virginia Code § 55.1-306.1 impairs the obligations of

contracts, including the 1989 Electric Distribution Easement, and impairs the rights and

obligations of parties to contracts, including the Granos and REC.

150.    Such impairment includes, but is not limited to, expanding and changing the

scope of use of the 1989 Electric Distribution Easement to include use for fiber optic, allowing

REC to use the 1989 Electric Distribution Easement for fiber optic, and prohibiting the Granos

from excluding REC or any of its assigns from the Granos' property, prohibiting the Granos

from making use of their property for any and all uses that are *not* electric distribution (including

fiber optic), and generally impairing the Granos' contractual right to receive the benefit of its

contract with REC.

151.    As a result of these actions, the Granos have suffered injury and are being

irreparably harmed, and are entitled to a declaratory judgment that their contractual obligations

are being unconstitutionally impaired, and a permanent injunction prohibiting all such prospective impairment.

152.     This claim is being raised in the alternative, both under 42 U.S.C. § 1983, and directly under Article I, Section 10 of the U.S. Constitution.  Plaintiff acknowledges that under circuit precedent (*Crosby v. Gastonia*, 635 F.3d 634 (4th Cir. 2011)), 42 U.S.C. § 1983 does not permit a claim for damages for a violation of the Contracts Clause.  But as acknowledged by the Fourth Circuit in *Crosby*, the circuit rule conflicts with the rule in at least one other federal circuit.  Plaintiffs thus certify that to the best of their knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, this claim is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation, and that the claim and this legal contention is warranted by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

**SUPPLEMENTAL COUNT 4: CONTRACTS CLAUSE VIOLATION BY GOVERNOR NORTHAM (42 U.S.C. § 1983, OR ALTERNATIVELY U.S. CONST. ART. I, § 10) (DECLARATORY AND INJUNCTIVE RELIEF)**

153.     The Granos incorporate the foregoing allegations as if re-alleged herein.

154.     The 1989 Electric Distribution Easement is a contract which sets out the rights and obligations of the Granos and REC.

155.     The Granos' contractual rights are vested rights under Virginia law.

156.     The Contracts Clause, Article I, Section 10 of the United States Constitution provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts."

157.     By approving and signing into law Virginia Code § 55.1-306.1, the Governor has impaired the obligations of contracts, including the 1989 Electric Distribution Easement, and impairs the rights and obligations of parties to contracts, including the Granos and REC.

158.     Such impairment includes, but is not limited to, expanding and changing the scope of use of the 1989 Electric Distribution Easement to include use for fiber optic, allowing REC to use the 1989 Electric Distribution Easement for fiber optic, and prohibiting the Granos from excluding REC or any of its assigns from the Granos' property, prohibiting the Granos from making use of their property for any and all uses that are *not* electric distribution (including fiber optic), and generally impairing the Granos' contractual right to receive the benefit of its contract with REC.

159.     As a result of the Governor's actions, the Granos have suffered injury and are being irreparably harmed, and are entitled to a declaratory judgment that their contractual obligations have been and are being unconstitutionally impaired, and a permanent injunction prohibiting all such prospective impairment.

160.     This claim is being raised in the alternative, both under 42 U.S.C. § 1983, and directly under Article I, Section 10 of the U.S. Constitution.  Plaintiff acknowledges that under circuit precedent (*Crosby v. Gastonia*, 635 F.3d 634 (4th Cir. 2011)), 42 U.S.C. § 1983 does not permit a claim for damages for a violation of the Contracts Clause.  But as acknowledged by the Fourth Circuit in Crosby, the circuit rule conflicts with the rule in at least one other federal circuit.  Plaintiffs thus certify that to the best of their knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, this claim is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation, and that the claim and this legal contention is warranted by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

32

## SUPPLEMENTAL COUNT 5: CONTRACTS CLAUSE VIOLATION BY THE COMMONWEALTH OF VIRGINIA U.S. CONST. ART. I, § 10) (DECLARATORY AND INJUNCTIVE RELIEF)

161.    The Granos incorporate the foregoing allegations as if re-alleged herein.

162.    The 1989 Electric Distribution Easement is a contract which sets out the rights and obligations of the Granos and REC.

163.    The Granos' contractual rights are vested rights under Virginia law.

164.    The Contracts Clause, Article I, Section 10 of the United States Constitution provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts."

165.    By enacting Virginia Code § 55.1-306.1, the Commonwealth has impaired the obligations of contracts, including the 1989 Electric Distribution Easement, and impairs the rights and obligations of parties to contracts, including the Granos and REC.

166.    Such impairment includes, but is not limited to, expanding and changing the scope of use of the 1989 Electric Distribution Easement to include use for fiber optic, allowing REC to use the 1989 Electric Distribution Easement for fiber optic, and prohibiting the Granos from excluding REC or any of its assigns from the Granos' property, prohibiting the Granos from making use of their property for any and all uses that are *not* electric distribution (including fiber optic), and generally impairing the Granos' contractual right to receive the benefit of its contract with REC.

167.    As a result of the Commonwealth's actions, the Granos have suffered injury and are being irreparably harmed, and are entitled to a declaratory judgment that their contractual obligations have been and are being unconstitutionally impaired, and a permanent injunction prohibiting all such prospective impairment.

### SUPPLEMENTAL COUNT 6: PHYSICAL TAKING OF PROPERTY BY
### COMMONWEALTH OF VIRGINIA
### (In Violation of the Fifth and Fourteenth Amendments)

168.    The Granos incorporate the foregoing allegations as if fully re-alleged herein.

169.    The Fifth Amendment to the United States Constitution, applied to the States through the Fourteenth Amendment, provides "nor shall private property be taken for public use, without just compensation."  U.S. Const. amend. V.

170.    The Supreme Court of the United States has recognized that the Declaratory Judgment Act, 28 U.S.C. § 2201, "allows individuals threatened with a taking to seek a declaration of the constitutionality of the disputed governmental action before potentially uncompensable damages are sustained."  *Duke Power Co. v. Carolina Entl. Study Grp., Inc.*, 438 U.S. 59, 71 n. 15 (1978).

171.    The Granos seek declaratory relief, pursuant to 28 U.S.C. § 2201(a) that Virginia Code § 55.1-306.1, both on its face and as applied to the Granos, effects a *per se* physical taking of property in violation of the Fifth and Fourteenth Amendments.  The Granos further seek a permanent injunction, pursuant to 28 U.S.C. § 2202, preventing the Commonwealth from enforcing the Statute or otherwise permitting any agencies, representatives or entities to trespass on, invade, occupy, use or otherwise take their private property under color of the Statute.

172.    By enacting the Statute, the Commonwealth "has physically taken property for itself or someone else."  *Cedar Point Nursery v. Hassid*, 594 U.S. ___, 141 S. Ct. 2063, 2072 (2021) (clarifying that "The essential question is not … whether the government action at issue comes garbed as a regulation… It is whether the government has physically taken property for itself or someone else – by whatever means…").

173.    Virginia Code § 55.1-306.1 declares that "the installation and operation of broadband or other communications services within any easement shall be deemed, as a matter of law, to be a permitted use within the scope of every easement" and allows "any incumbent utility or communications provider may use an easement to install, construct, provide, maintain, modify, lease, operate, repair, replace, or remove its communications equipment, system, or facilities, and provide communications services through the same..."

174.    The Commonwealth's enactment of the Statute added easement terms and rights to the 1989 Electrical Distribution Easement on behalf of "any incumbent utility" and all "communications provider[s]."

175.    Through the enactment of the Statute the Commonwealth has given a right of access onto the Granos' property to "any incumbent utility" and all "communications provider[s]," beyond the express rights of the existing 1989 Electrical Distribution Easement.

176.    Through the enactment of the Statute the Commonwealth has taken the Granos' right to exclude "any incumbent utility" and all "communications provider[s]" from entering their property for the purposes stated in the Statute.

177.    "The right to exclude is 'one of the most treasured' rights of property ownership." *Cedar Point*, 141 S. Ct. at 2072 (citation omitted).  It is not "an empty formality, subject to modification at the government's pleasure.  On the contrary, it is a 'fundamental element of the property right,' that cannot be balanced away." *Id.* at 2077 (quoting *Kaiser Aetna v. United States*, 444 U.S. 164, 179-80 (1979)).

178.    This Court has previously found that "Va. Code § 55.1-306.1 deprives the Granos of their property right to exclude broadband equipment..." *See* Mem. Op. (ECF No. 47), at 9.

179.     Accordingly, the Commonwealth's enactment of the Statute "appropriates for the enjoyment of third parties the owners' right to exclude." *Cedar Point*, 141 S. Ct. at 2072.

180.     The Supreme Court has recently revisited its jurisprudence in this area to observe that "the appropriation of an easement constitutes a physical taking." *Id.* at 2073

181.     The Statute the Commonwealth enacted "grants a right to invade [private] property.  It therefore constitutes a *per se* physical taking." *Cedar Point*, 141 S. Ct. at 2080.

182.     The Commonwealth's physical taking occurred "[o]nce § 55.1-306.1 went into effect…" on July 1, 2020.  Mem. Op. (ECF No. 47) at 9.

183.     By enacting the Statute, the Commonwealth has effected a *per se* taking of the Granos' property rights in violation of the Fifth and Fourteenth Amendments.  *See Cedar Point*, 141 S. Ct. at 7 ("Whenever a regulation results in a physical appropriation of property, a *per se* taking has occurred."); at 10 ("The regulation appropriates a right to physically invade … It is therefore a *per se* physical taking."); at 20 ("Unlike a mere trespass, the regulation grants a formal entitlement to physically invade [private property]… [and] amounts to simple appropriation of private property.").

184.     Because the Statute takes the Plaintiffs' right to exclude and gives REC or "communications providers" a right to access the property without consent or compensation, it effects a *per se* unconstitutional physical taking.  Plaintiffs are entitled to declaratory and injunctive relief preventing the application or enforcement of Va. Code § 55.1-306.1 against them.

### SUPPLEMENTAL COUNT 7: PHYSICAL TAKING OF PROPERTY BY GOVERNOR NORTHAM (In Violation of the Fifth and Fourteenth Amendments, by and through 42 U.S.C. § 1983)

185.     The Granos incorporate the foregoing allegations as if fully re-alleged herein.

186.     The Fifth Amendment to the United States Constitution, applied to the States through the Fourteenth Amendment, provides "nor shall private property be taken for public use, without just compensation."  U.S. Const. amend. V.

187.     The Supreme Court of the United States has recognized that the Declaratory Judgment Act, 28 U.S.C. § 2201, "allows individuals threatened with a taking to seek a declaration of the constitutionality of the disputed governmental action before potentially uncompensable damages are sustained." *Duke Power Co. v. Carolina Entl. Study Grp., Inc.*, 438 U.S. 59, 71 n. 15 (1978).

188.     The Granos seek declaratory relief, pursuant to 28 U.S.C. § 2201(a) that Virginia Code § 55.1-306.1, both on its face and as applied to the Granos, effects a *per se* physical taking of property in violation the Fifth and Fourteenth Amendments.  The Granos further seek a permanent injunction, pursuant to 28 U.S.C. § 2202, preventing the Commonwealth from enforcing the Statute or otherwise permitting any agencies, representatives or entities to trespass on, invade, occupy, use or otherwise take their private property under color of the Statute.

189.     By signing SB794 and HB831 into law, the Governor "has physically taken property for itself or someone else." *Cedar Point Nursery v. Hassid*, 594 U.S. ___, 141 S. Ct. 2063, 2072 (2021) (clarifying that "The essential question is not … whether the government action at issue comes garbed as a regulation… It is whether the government has physically taken property for itself or someone else – by whatever means…").

190.     Virginia Code § 55.1-306.1 declares that "the installation and operation of broadband or other communications services within any easement shall be deemed, as a matter of law, to be a permitted use within the scope of every easement" and allows "any incumbent utility or communications provider may use an easement to install, construct, provide, maintain,

modify, lease, operate, repair, replace, or remove its communications equipment, system, or facilities, and provide communications services through the same..."

191.    The Governor's affirmative act of signing the Statute into law instantaneously added easement terms and rights to the 1989 Electrical Distribution Easement on behalf of "any incumbent utility" and all "communications provider[s]."

192.    The Governor, by approving and signing the Statute into law, has acted under color of state law.

193.    Accordingly, the Governor has given a right of access onto the Granos' property to "any incumbent utility" and all "communications provider[s]," beyond the express rights of the existing 1989 Electrical Distribution Easement.

194.    The Governor's actions have taken the Granos' right to exclude "any incumbent utility" and all "communications provider[s]" from entering their property for the purposes stated in the Statute.

195.    "The right to exclude is 'one of the most treasured' rights of property ownership." *Cedar Point*, 141 S. Ct. at 2072 (citation omitted).  It is not "an empty formality, subject to modification at the government's pleasure.  On the contrary, it is a 'fundamental element of the property right,' that cannot be balanced away." *Id.* at 2077 (quoting *Kaiser Aetna v. United States*, 444 U.S. 164, 179-80 (1979)).

196.    This Court has previously found that "Va. Code § 55.1-306.1 deprives the Granos of their property right to exclude broadband equipment..." *See* Mem. Op. (ECF No. 47), at 9.

197.    Accordingly, the Governor has "appropriate[d] for the enjoyment of third parties the owners' right to exclude."  *Cedar Point*, 141 S. Ct. at 2072.

198.     The Supreme Court has recently revisited its jurisprudence in this area to observe that "the appropriation of an easement constitutes a physical taking." *Id.* at 2073

199.     The Governor's action "grants a right to invade [private] property.  It therefore constitutes a *per se* physical taking." *Cedar Point*, 141 S. Ct. at 2080.

200.     The Governor's actions effected a physical taking "[o]nce § 55.1-306.1 went into effect…" on July 1, 2020.  Mem. Op. (ECF No. 47) at 9.

201.     The Governor's signing the bill into law has effected a *per se* taking of the Granos' property rights in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983.  *See Cedar Point*, 141 S. Ct. at 7 ("Whenever a regulation results in a physical appropriation of property, a *per se* taking has occurred."); at 10 ("The regulation appropriates a right to physically invade … It is therefore a *per se* physical taking."); at 20 ("Unlike a mere trespass, the regulation grants a formal entitlement to physically invade [private property]… [and] amounts to simple appropriation of private property.").

202.     Because the Statute takes the Plaintiffs' right to exclude and gives REC or "communications providers" a right to access the property without consent or compensation, it effects a *per se* unconstitutional physical taking.  Plaintiffs are entitled to declaratory and injunctive relief preventing the application or enforcement of Va. Code § 55.1-306.1 against them.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, John R. Grano, Jr. and Cynthia Taft Grano, pray that this Court enter judgment against the Defendants as follows:

A.     For an Order, pursuant to 28 U.S.C. § 2201, 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments, as against Governor Northam declaring that:

      i)         On its face, Virginia Code § 55.1-306.1 violates the Fifth and Fourteenth Amendments of the U.S. Constitution by depriving property owners of a vested right to property without due process of law;

      ii)       Virginia Code § 55.1-306.1, as applied to the Granos, is unconstitutional for the reasons stated under i) and ii); and thus that

      iii)     The rights transferred to REC pursuant to Virginia Code § 55.1-306.1 represent a deprivation of constitutional rights under the color of State law and that it is unconstitutional for REC or any other entity to place broadband and/or communications systems, including fiber-optic cable, on the Granos' property in reliance upon Virginia Code § 55.1-306.1.

      iv)     That the Governor has taken state action in violation of the Fifth and Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. § 1983 which has deprived property owners of a vested right to property without due process of law.

      v)      That the Governor has taken state action in violation of the Fifth and Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. § 1983 which has effected a physical taking of the Plaintiff's property.

B.     For an Order declaring that the Governor has taken state action which impedes a valid private contract under Article I, Section 10 of the U.S. Constitution and 42 U.S.C. § 1983.

C.     Amendments, as against the Commonwealth of Virginia declaring that:

      i)         On its face, Virginia Code § 55.1-306.1 violates the Fifth and Fourteenth Amendments of the U.S. Constitution by effecting a *per se* physical taking;

40

ii)   On its face, Virginia Code § 55.1-306.1, impedes a valid private contract
under Article I, Section 10 of the U.S. Constitution; or in the alternative
that

iii)   Virginia Code § 55.1-306.1, as applied to the Granos, is unconstitutional
for the reasons stated under i) and ii);

iv)   The Commonwealth has unconstitutionally impeded a valid private
contract in violation of Article I, Section 10 of the U.S. Constitution.

D.   For an Order, pursuant to 28 U.S.C. § 2201, declaring that the Commonwealth has
unconstitutionally impeded a valid private contract under Article I, Section 10 of the U.S.
Constitution and 42 U.S.C. § 1983.

E.   For an Order, pursuant to 28 U.S.C. § 2201, declaring that, on its face, Virginia
Code § 55.1-306.1, impedes a valid private contract under Article I, Section 10 of the U.S.
Constitution;

F.   For an Order pursuant to 28 U.S.C. § 2202 permanently enjoining the
Commonwealth and the Governor from enforcing or applying Virginia Code § 55.1-306.1
against the Plaintiffs or at large;

G.    For an Order pursuant to 28 U.S.C. § 2202 permanently enjoining REC or any of
its agents, permittees or assigns or any other entity authorized by Virginia Code § 55.1-306.1
from laying, operating, or maintaining fiber-optic cable on the Granos' property without
obtaining an easement through negotiation or condemnation procedures which provide a
mechanism for constitutionally mandated just compensation;

H.   For an Order as against REC declaring that it has unconstitutionally impeded a
valid private contract in violation of Article I, Section 10 of the U.S. Constitution;

41

I.       For an award of attorneys' fees and costs expended on the Plaintiffs' behalf pursuant to 42 U.S.C. §§ 1983 and 1988;

J.       Any other relief as the nature of the case and furtherance of justice and constitutional principles may require.

Respectfully submitted,

**JOHN R. GRANO, JR.**
**CYNTHIA TAFT GRANO**


_____/s/_____
Joshua E. Baker

Joshua E. Baker (VSB No.: 74302)
jeb@waldoandlyle.com
Brian G. Kunze (VSB No.: 76948)
bgk@waldoandlyle.com
Blake A. Willis (VSB No.: 93854)
baw@waldoandlyle.com
WALDO & LYLE, P.C.
301 W. Freemason Street
Norfolk, VA 23510
Telephone: (757) 622-5812
Facsimile: (757) 622-5815
*Counsel for Plaintiffs, John R. Grano, Jr.*
*and Cynthia Taft Grano*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that true and exact copies of the foregoing Amended Complaint have been served upon the following via the CM/ECF system on this 26th day of August, 2021:

Andrew P. Sherrod
Elizabeth C. Burneson
HIRSCHLER FLEISCHER,
A PROFESSIONAL CORPORATION
Post Office Box 500
Richmond, Virginia 23218-0500

Robert B. McEntee, III
Assistant Attorney General
Office of the Attorney General
COMMONWEALTH OF VIRGINIA
202 North Ninth Street
Richmond, Virginia 23219

       /s/ Joshua E. Baker
Joshua E. Baker (VSB No.: 74302)
jeb@waldoandlyle.com
Brian G. Kunze (VSB No.: 76948)
bgk@waldoandlyle.com
Blake A. Willis (VSB No.: 93854)
baw@waldoandlyle.com
WALDO & LYLE, P.C.
301 W. Freemason Street
Norfolk, VA 23510
Telephone: (757) 622-5812
Facsimile: (757) 622-5815